Argued June 5, affirmed September 6, 1957

# WILES *v.* WILES

315 P. 2d 131

*E. B. Sahlstrom,* Eugene, argued the cause for appellant. On the brief were Thompson & Sahlstrom, Eugene.

*Russell R. Niehaus,* Portland, argued the cause for respondent. With him on the brief were Milligan & Brown, Eugene, and Wheelock & Richardson, Portland.

Before PERRY, Chief Justice, and ROSSMAN, LUSK and WARNER, Justices.

WARNER, J.

In October, 1948, the plaintiff-appellant, Glenna Ellene Wiles, filed a suit for divorce from the defendant-respondent, Eugene F. Wiles, in Lane County, Oregon. Her complaint also asked for an allowance for the support of the two minor daughters of the parties. At that time, the defendant was a law student at the University of Idaho and a resident of that state. From the record we learn that service of the summons and complaint was had upon him on November 1, 1948, in Moscow, Idaho. He ignored this out-of-state service and entered no appearance in the pending suit. On September 1, 1949, plaintiff secured her divorce from defendant; and, notwithstanding the want of personal service on the defendant, the decree directed him to pay his former wife the sum of $25 per month for the support of each of the two minor children and $125 as attorney fees and plaintiff's costs.

By August 12, 1954, these money allowances on the face of that decree had cumulated to $3,110. On that date on plaintiff's ex parte motion in the divorce suit, she was given judgment for that amount and execution was issued on the judgment the day following its entry.

In the interim, that is between the date of the entry of the decree and the entry of the judgment on August 12, 1954, defendant attended the law schools of the University of Idaho and the University of San Francisco, and was admitted to practice law in Oregon in September, 1952. Sometime after that he established his residence in Portland, Oregon, where he was employed by the U. S. Department of Interior with a "net salary" of $4,000.

On the twenty-fourth day of November, 1954, the defendant moved to set aside the judgment of August 12, 1954, upon the ground that the court had no jurisdiction over the defendant because of the want of personal service on him in Oregon prior to September 1, 1949.

Two days later, i.e., on November 26, 1954, the defendant filed a separate motion for an order modifying the decree of September 1, 1949, in the following particulars: (1) to allow him a right to visit his children at times and places determined by the court; (2) to increase his obligation to support his daughters from $25 per month to $40 per month for each child; and (3) restraining the plaintiff from removing the children from the state of Oregon without specific authorization of the court.

On the same date, he also filed a motion for an order recalling the execution issued on the judgment, dated August 12, 1954, and restraining the issuance of any further execution based thereon.

Thus, there were three motions of the defendant before the court when it made its order for the plaintiff to appear on December 13, 1954, to show cause with respect to the relief sought by these several motions.

The plaintiff responded with a countermotion for an allowance of $100 per month for the support of each

child and a further allowance of $300 as attorney's
fees in the proceeding from whence this appeal comes.
At the same time plaintiff filed a reply in denial of
the allegations of defendant's affidavits filed in sup-
port of his several motions, and also a petition which
prayed that in the event any portion of defendant's
motions to set aside the judgment or modify the decree
are allowed that plaintiff be given an award of $100
for each and every month for the support of "each of
the two children of the parties retroactively to the
time of the entry of the decree in this case on Septem-
ber 1, 1949, together with a reasonable attorney's fee
and court costs  *  *  *."

A hearing on all of the issues thus framed resulted
in an order on December 30, 1954, which: (1) set aside
and vacated the money judgment of August 12, 1954;
(2) withdrew and cancelled the execution issued pursu-
ant to that judgment; (3) declared null and void the
provisions of the divorce decree of September 1, 1949,
providing for payment of support money, attorney's
fees and costs; (4) modified the divorce decree by
directing: (a) defendant to pay plaintiff $45 per each
calendar month for the support of each of his chil-
dren, commencing with the month of December, 1954,
with a credit upon such amounts as the Veterans Ad-
ministration might pay from any pension or benefits
of the defendant; (b) provided for the visitation of
the children by their father; and (c) prohibited the
removal of the children from the state by either parent
without the consent of the court first obtained; (5)
granted an allowance of $50 to plaintiff as attorney's
fees; and (6) otherwise the several motions of the
parties were dismissed.

The plaintiff appeals from this order.

■ No issue is raised concerning the character of

service made upon defendant in the state of Idaho in November, 1948, nor does plaintiff claim any validity for that part of the decree prior to November 24, 1954, requiring the defendant father to pay support money for his children. These concessions are appropriately made for it has long been the constitutional rule that a court cannot adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant. The classic case attesting the rule is *Pennoyer v. Neff*, 95 US 714, 24 L ed 565.

Plaintiff contends, however, that by reason of the defendant's subsequent appearance, which she asserts constituted a general appearance in the suit by reason of his motions filed November 24, 1954, the defect of service is cured by rendering valid the money judgment provisions of the original decree of September 1, 1949, and subsequent judgment rendered thereon in August of 1954. In other words, argues the plaintiff, such appearance by defendant in November, 1954, operated retroactively to reinstate the money features of the decree with the same force and effect as if the defendant had made a general appearance in the divorce prior to September 1, 1949, the date of the decree in controversy. But we do not think so for the reasons which follow.

■ Whether the defendant's motion to vacate the judgment constitutes a general or special appearance is rendered moot in view of his subsequent motion to modify certain provisions respecting his future obligations to the children and his request for provisions enlarging his opportunities to visit them. By the later motion, he submitted to the jurisdiction of the court.

■ But when one moves to vacate a decree void on its face as a futile attempt at a judgment in personam, even if the motion be by a general appearance, it will

not infuse a void judgment with the vitality which it lacks. "The judgment, if void when rendered, will always remain void; * * * the validity of every judgment depends upon the jurisdiction of the court before it is rendered, not upon what may occur subsequently." *Pennoyer v. Neff,* supra (24 Led 570-571). The validity of a judgment is determined as of the date of its rendition and, if void, it remains so forever. *In re Hanrahan's Will,* 109 Vt 108, 194 A 471, 478; 49 CJS 882, Judgments § 451; 31 Am Jur 92, Judgments § 431. Nor is a judgment ratified by moving to set it aside, or thus made better or worse. *Langston v. Nash,* 192 Ga 427, 15 SE2d 481, 484; *Martin v. Cobb,* 77 Tex 544, 14 SW 162, 163. Even the fact that a former husband, without excepting to the original judgment, had paid money in pursuance of the judgment for several years, cannot affect the result. *Langston v. Nash,* supra (15 SE2d 484).

It is this very absence of vitality in a void judgment from the moment of its rendition that tends to explain why defendant's appearance in the matter, be it called general, cannot operate retroactively to give it life. A void judgment has been variously and picturesquely described many ways as wanting in any value or substance which can be revived. It has been termed: "mere wastepaper." *Commander v. Bryan* (Tex Civ App) 123 SW2d 1008, 1015; "the mere image of a judgment." *Western Pattern & Manufacturing Co. v. American Metal Shoe Co.,* 175 Wis 493, 185 NW 535, cited in *Finch v. Pacific Reduction and Chemical Mfg. Co.,* 113 Or 670, 673, 234 P 296. In *White v. Ladd,* 41 Or 324, 68 P 739, this court, using the words of others, at page 330, refers to a void judgment as "a dead limb upon the judicial tree, which should be lopped off. * * * It can bear no fruit to the plaintiff, but it is

a constant menace to the defendant." Also see 1 Freeman on Judgments (5th ed) p 645, where substantially the same description is used.

■ It is not only a denial of due process to enforce a judgment rendered without jurisdiction (*Pennoyer v. Neff*, supra, 24 L ed 572) but the mere act of fixing a sum due when the court is without jurisdiction is likewise an abortive exercise of judicial power repugnant to the Fourteenth Amendment. *Riverside & Dan River Cotton Mills, Inc. v. Menefee*, 237 US 189, 59 L ed 910, 35 S Ct 579; *Galpin v. Page*, 18 Wall 350, 21 L ed 959, 963.

■ The decree of September, 1949, in the instant matter, in so far as it pretends to be a judgment in personam against the defendant, was a nullity; a judgment stillborn, a judgment which never had life, and, therefore, never could be a subject for a retroactive judicial resurrection as contended for by the plaintiff.

■ This court does not construe a general appearance for the purpose of vacating a judgment void for want of jurisdiction of defendant as a validation of the void judgment, even though the defendant by his general appearance thereby subjects himself to the jurisdiction of the court in connection with all proceedings transpiring in the matter after the vacation of the judgment. Such was the essence of our holding in *Finch v. Pacific Reduction and Chemical Mfg. Co.*, supra (113 Or 671, 675), where the defendant corporation made a general appearance for the purpose of vacating a judgment void for want of personal service of summons and at the same time sought permission to thereafter file an answer to the complaint. The judgment was vacated and the filing of the answer allowed. Evidently, the plaintiff here contemplated the same legal result as to the defendant's appearance or she

would not have otherwise filed the petition in this matter which she did on December 13, 1954, wherein she prays for a retroactive award of $100 per month for each child from September 1, 1949. Such petition would have been surplusage if defendant's motion to set aside the void judgment had the effect of validating what should have been stricken.

■ But even if that portion of the decree of September, 1949, was impotent and innocuous so far as it apparently obligated the defendant to pay any amount of money therein named, the matter of making provision in the decree as to the future care and custody, nurture or education of the minor children of the parties was one in which the court was still empowered by statute to do. ORS 107.130 (2). And when it later did so, by the order of December twenty-fourth, appealed from, it was effective for all purposes as it then had jurisdiction of both parties.

■ The appellant's second, third and fourth assignments of error relate, respectively, to the court's failure to make a retroactive allowance for the children in accordance with plaintiff's petition, in lieu of the provisions made in the void order of September 1, 1949, the court's failure to allow what appellant deems adequate for the future support of the minor children and the court's failure to make a more generous allowance to appellant for attorney's fees in this proceeding.

None of the last-numbered assignments present any problems of law. The claims as made to the circuit court in each instance were concerning matters inviting the exercise of the court's sound discretion. *Blake v. Blake,* 147 Or 43, 53, 31 P2d 768. Our examination of the evidence persuades us there was no abuse by the court of its power in the premises and that in each instance the disposition was supported by the record.

The plaintiff justifiably relies upon *McFarlane v. McFarlane,* 43 Or 477, 73 P 203, 75 P 139 and *Hess v. Hess,* 115 Or 595, 239 P 124, as authority for the presentation of her petition for a retroactive allowance. But granting such relief is not a mandatory matter. In declining to make a retroactive provision, the trial judge, no doubt, gave considerable weight to the over-reaching and inequitable character of the plaintiff's demands.

We find considerable and continuing interest on the part of the defendant in the welfare of his daughters who were age eight and six years at the time of the trial. He was a seriously-wounded war veteran who, with the aid of his pension and GI education allotments, had, after the war, qualified himself to practice law and at the time of trial was receiving a salary of about $4,000 per annum, "net," as an attorney in the Portland office of the solicitor of the U. S. Department of Interior. The decree entered in the divorce suit on September 1, 1949, provided, as we have earlier indicated, that the defendant contribute $25 per month for each of his daughters and is the provision of the decree which the circuit court vacated as void. On the face of this void judgment and before its vacation as such, there had accumulated, as apparent installments in default, $3,110, as of August 13, 1954. The execution issued by plaintiff on this precipitated the present proceedings and the ultimate order from whence plaintiff appeals. But the record here also reveals that during the entire period from the date of the rendition of the vacated portion of the divorce decree, that is from September 1, 1949, to November 30, 1954, a few days before trial, the defendant had caused the U. S. Veterans Administration to divert from his pension allowances to the plaintiff, for the use and benefit of his daughters,

moneys totalling $4,536.61, and, in addition, defendant had from time to time supplied items of clothing and smaller sums of money for their use. The amount paid through the Veterans Administration is approximately $1,225 more than Wiles would have been obligated to pay under the decree of September 1, 1949, had he been personally served in Oregon in the divorce suit. In making the last calculation of $1,225, we have arbitrarily added $200 as support money stipulated under the 1949 decree for the four months from August 13 to the date of the last pension payment made prior to the trial. Had the court below ordered $200 per month as the retroactive allowance petitioned for by plaintiff for the same period, it would have amounted to $12,500 as of December, 1954, an amount extravagantly beyond the reach of defendant's resources and income. But plaintiff made it clear in her petition for this species of retroactive relief that the defendant "ought not in equity and good conscience be allowed to assert * * * that child support payments made by the Veterans Administration were in lieu of payments to be made by him as provided by the decree of this court [dated September 1, 1949]." In short, plaintiff was claiming a prospective $12,500 for child support prior to the hearing in the instant matter and expressly declining to give credit for the $4,535.61 she had theretofore received during the same period for the same purpose. She was seeking an equivalent enrichment of more than $17,000 with no showing that defendant was in a position to pay such an amount or any substantial part thereof or that the reasonable needs of little girls age eight and six years had required such an outlay in the past or would have a greater need, for awhile at least, of more than $45 per month, each. Moreover, we find that the plaintiff has been employed most of

the time since the entry of the divorce decree in 1949, with "take home" pay of $175 to $180 each month and since 1950 married to a husband, Mr. Holling, whose "take home" pay was around $275 per month. Although Mr. Holling was under no obligation to support the children of the parties, he was under a duty to support her. As a parent, she, too, has some financial obligation to her children, and, as shown by the record, was in a favorable position to do so.

Plaintiff's position in this matter is one of seeking equity but with no disposition to do equity and, therefore, her applications for aid beyond the provisions made in the order appealed from do not commend themselves to the court.

The circuit court is affirmed. Costs to neither party.