Argued April 19, affirmed May 28, 1974

DOYLE (No. 250729), *Appellant, v.* DOYLE, *Respondent.*

522 P2d 906

*Norman N. Griffith,* Portland, argued the cause and filed the brief for appellant.

*Kenneth W. Saxon,* Portland, argued the cause for respondent. With him on the brief was William F. Thomas, Portland.

Before LANGTRY, Presiding Judge, and FOLEY and THORNTON, Judges.

LANGTRY, P. J.

In 1958 plaintiff-wife filed a complaint in Multnomah County seeking a divorce. After an unsuccessful attempt at personal service, service was made on defendant by publication pursuant to ORS 15.120 and an order signed on December 22, 1959. The affidavit upon which the publication order was based gave a San Jose, California address for defendant. Plaintiff obtained a default divorce decree in March 1960 granting her a divorce, custody of the couple's only child, and "$250 per month permanent alimony for the support of plaintiff and said minor child * * *" plus her attorney fees and costs.

In May 1973 defendant filed a motion to vacate that portion of the decree requiring him to pay $250 monthly and the award of attorney fees and costs. The motion was predicated on the court's lack of personal jurisdiction over defendant at the time it entered the decree because he was then domiciled in California. *Pennoyer v. Neff,* 95 US 714, 24 L Ed 565 (1877).

Plaintiff appeals from an order granting defendant's motion. She attacks the order on two major

grounds in which she asserts: (1) Defendant was an Oregon domiciliary at the time the original decree was entered and thus he was subject to the court's decree; (2) even if he was a California domiciliary, the Oregon court had jurisdiction to enter an enforceable decree with reference to support. (3) Plaintiff also raises various equitable grounds why this court should give effect to the decree even if we find it was made without the court's having jurisdiction to do so.

■ (1). While the statutes establishing the jurisdiction of our courts are written with reference to "residence," *see* ORS 14.010, former ORS 107.060, the Oregon Supreme Court has construed residence as used in this context to mean domicile. *Fox et ux v. Lasley,* 212 Or 80, 88-9, 318 P2d 933 (1957), *overruled on other grounds Hawkins v. Hawkins,* 264 Or 221, 504 P2d 709 (1972); *Zimmerman v. Zimmerman,* 175 Or 585, 591, 155 P2d 293 (1945).

In discussing the meaning of domicile the court said:

"No single word in the legal vocabulary is more difficult than 'domicil' to define accurately * * *.

"In *Reed's Will,* [48 Or 500, 504, 87 P 763, 9 LRA (ns) 1159 (1906)], this court said:

" ' "Domicile," strictly speaking, is the relation the law creates between an individual and a particular place or country, and each case is dependent upon its own particular facts. It is not in a legal sense synonymous with "residence." * * * To constitute domicile there must be both the fact of a fixed habitation or abode in a particular place, and an intention to remain there permanently or indefinitely * * *.' " *Elwert v. Elwert,* 196 Or 256, 264-65, 248 P2d 847, 36 ALR2d 741 (1952).

Prior to 1957 both parties were domiciled in Oregon. The question is whether defendant changed his domicile to California thereafter.

■ A person can have only one domicile, and until a new domicile is established, the previous domicile continues. *Elwert v. Elwert,* supra, 196 Or at 265:

> "The dominant factor in the change of domicil is intention. To constitute a change three things are essential: (1) residence in another place, (2) an intention to abandon the old domicil, and (3) an intention to acquire a new domicil * * *.
>
> "A person does not acquire a new domicil by merely going to another place with the intention of making it his domicil. More is required in the eyes of the law. Such intention must be supported with an intention (1) of residing in the new place for a more or less indefinite time and (2) of making the new place his home within the meaning of 'home' as that term is used in the law of domicil * * *."

Sometime in 1957 defendant left the marital home in Portland and went to California. He stayed there, living in several places, until 1967 when he moved back to Oregon. He testified that he registered to vote where he lived in California, and that he obtained a California driver's license in 1957 which he maintained until his return to Oregon. He said that his mother informed him of the divorce, but that he had no knowledge of the support provision in the decree. He remarried in Nevada in 1960. He occasionally visited his mother in Oregon, and had maintained some things in storage (like old Army uniforms) at one of his mother's houses in Oregon. During this time the plaintiff was living in and caring for a four-apartment building belonging to defendant's mother. She apparently had this accommodation for herself and son because of the relationship with the defendant's mother.

Plaintiff testified that she had talked with defendant about the pending divorce, and that defendant knew about it at a time when he visited her in 1959. She contended he knew about the judgment later. He categorically denied all such knowledge, and his mother, who had always remained close to plaintiff and the son, in her testimony tended to corroborate him in this regard.

Defendant has never made any payment on account of the judgment. Plaintiff did not, from 1960 until this motion was filed, make any attempt to collect the accruing judgment, or improve the status of the judgment, although it appears that if she really had wanted to she could have found the defendant in California and sometimes in Oregon from 1960 to 1967, and since 1967 she has known his whereabouts in Oregon. At the conclusion of the hearing before the trial court, the judge suggested that she now proceed to get a valid judgment for child support, but by the time of oral argument, no action had been taken in that regard.

■ The evidence leaves us puzzled as to plaintiff's motives in several respects, and thinking both parties could have told the court more than they did, but viewing the evidence in the record as a whole, we conclude that defendant was not domiciled in Oregon from 1957 to 1967. For this reason, we need not decide if the service of process by publication pursuant to ORS 15.120 was sufficient to satisfy the due process requirement of the U.S. Constitution. *Cf. Mullane v. Central Hanover Tr. Co.,* infra.

(2). Do the Oregon courts have jurisdiction to enter enforceable money judgments for support against

California domiciliaries absent personal service within this state?

Plaintiff contends that the support provision should be upheld because defendant had sufficient "minimum contacts" with Oregon to give an Oregon court jurisdiction, *Internat. Shoe Co. v. Washington,* 326 US 310, 66 S Ct 154, 90 L Ed 95, 161 ALR 1057 (1945), and that service by publication is constitutionally permissible where personal service is impossible because the whereabouts of a party cannot be ascertained. *Mullane v. Central Hanover Tr. Co.,* 339 US 306, 70 S Ct 652, 94 L Ed 865 (1950).

At the time the decree was entered in 1960, the jurisdiction of the courts of this state over a natural person was defined by ORS 14.010:

> "No natural person is subject to the jurisdiction of a court of this state, unless he appear in the court, or be found within the state, or be a resident thereof, or have property therein; and in the last case only to the extent of such property at the time the jurisdiction attached. This section does not limit the power of the courts of this state to declare a marriage void, or a dissolution thereof, when the defendant is a nonresident of the state, in the cases provided for in ORS chapter 107."

■ The exception contained in the last sentence is explained by Oregon cases which hold that the courts of this state have jurisdiction to affect the status of a marriage if only one party thereto is within its jurisdiction. *McFarlane v. McFarlane,* 43 Or 477, 73 P 203, 75 P 139 (1903). However, Oregon courts do not have the power to impose financial liability upon a party to a marriage pursuant to a divorce proceeding unless that party is within the jurisdiction of the court. *Scarth v. Scarth,* 211 Or 121, 127, n 3, 315 P2d 141

(1957); *Wiles v. Wiles,* 211 Or 163, 315 P2d 131 (1957); *McFarlane v. McFarlane,* supra.

Plaintiff relies on cases from other states holding parties liable for alimony where they were served beyond the borders of the forum state. *Soule v. Soule,* 193 Cal App 2d 443, 14 Cal Rptr 417 (1961), *cert denied* 368 US 985 (1962); *Stucky v. Stucky,* 186 Neb 636, 185 NW2d 656 (1971); *Mizner v. Mizner,* 84 Nev 268, 439 P2d 679, *cert denied* 393 US 847 (1968); *Hines v. Clendenning,* 465 P2d 460 (Okla 1970); *Dillon v. Dillon,* 46 Wis 2d 659, 176 NW2d 362 (1970).

*Mizner* and *Soule* involved application of California's long-arm statute conferring jurisdiction over a nonresident who was a resident at the time the cause of action arose. Former Cal Code of Civil Procedure § 417 (b). In *Hines v. Clendenning,* supra, the court relied on a provision of the Oklahoma long-arm statute providing jurisdiction of a defendant who is

> " 'maintaining any other relation to this state or to persons or property including support for minor children who are residents of this state which affords a basis for the exercise of personal jurisdiction by this state consistently with the Constitution of the United States.' " (12 Okla Stat § 1701.03 (a) (Supp 1965), 465 P2d at 462.)

In *Stucky* the majority opinion found jurisdiction to enter a personal judgment against a nonresident without the aid of a long-arm statute. The court, construing statutes very similar to the statutes of Oregon, applied the reasoning of "minimum contacts" to uphold the judgment. However, three members of the seven-man court vigorously dissented and the seventh concurred with the majority solely on the ground the record revealed the defendant was a Nebraska domiciliary when the decree was entered.

Oregon's long-arm statute (ORS 14.035) was not enacted until 1963 (Oregon Laws 1963, ch 352, § 1) and is not as broad as the California or Oklahoma statutes.

*Dillon v. Dillon,* supra, involved application of a Wisconsin statute providing for personal jurisdiction over a nonresident party to the marriage where the party lived in Wisconsin

"* * * in the marital relationship at least six consecutive months within the six years preceding the commencement of a divorce action * * *." 46 Wis 2d at 671. (Wis Stat Ann § 247.057 (1).)

Illinois and Kansas have similar specific statutes granting personal jurisdiction over nonresidents in divorce actions. Ill Stat Ann ch 110, § 17 (1) (e) (Smith-Hurd 1968); Kan Stat Ann § 60-308 (b) (6) (1964). *See Scott v. Hall,* 203 Kan 331, 454 P2d 449 (1969). Oregon has no such statute.

While the cases cited by plaintiff point out that several states have felt that the problems presented by a deserting spouse may require an extension of the state's jurisdiction, they do not represent the law in Oregon. We are bound by the decisions of our Supreme Court in *McFarlane v. McFarlane,* supra, and *Wiles v. Wiles,* supra. Any change must be made by that court, *cf. Stucky v. Stucky,* supra, or the legislature.

(3). Plaintiff also contends that the court erred in failing to find defendant's motion to vacate should be denied on the grounds of equitable estoppel, laches, inexcusable neglect, because defendant, having remarried, cannot accept the benefits of the decree and challenge the remainder, and because the intervening rights of an innocent third party (the child) prevent modification of the decree.

It is true that defendant let many years go by apparently without making an effort to learn whether a requirement had been made for him to pay support for his son. But against this is the fact defendant knew he had not been served. Further, plaintiff has let the same time go by while she has made no attempt to enforce her judgment, or obtain a good one. And she has let the past seven years similarly go by despite the fact of defendant's presence in the state with her knowledge. *Cf. McFarlane v. McFarlane,* supra. Plaintiff may still seek a valid judgment for future child support.

■ Defendant's motion to vacate the *in personam* judgment is not inconsistent with his remarriage. The divorce is valid, the money judgment is void. *Wiles v. Wiles,* supra. Defendant is not barred from challenging one while accepting the other under the rule enunciated in *Carpenter v. Carpenter,* 153 Or 584, 590, 56 P2d 305, 57 P2d 1098, 58 P2d 507, 105 ALR 386 (1936).

Affirmed.

THORNTON, J., specially concurring.

In view of *Wiles v. Wiles,* 211 Or 163, 315 P2d 131 (1957), I am compelled to concur in the result.

*Wiles* is, however, distinguishable on the facts from the case at bar in some respects. For example, in *Wiles* the defendant was not guilty of unclean hands, nor had he remarried.

Divorce suits are treated as matters in equity. *Cookson v. Cookson,* 246 Or 118, 424 P2d 218 (1967). Defendant has come into court seeking equitable relief. It seems to me that where, as here, a husband and father leaves his child of tender years and knowingly permits his child to be supported by his former wife

over a period of some 13 years, and during that time he remarries, he should be held to have come into court with unclean hands, and should be estopped from deleting the financial provisions of the decree. *Attebery v. Attebery*, 172 Neb 671, 111 NW2d 553 (1961).

One should not be able to accept the privileges which a divorce decree confers (remarriage) and at the same time escape the burdens imposed. *State of Tennessee v. Barton*, 210 Ark 816, 198 SW2d 512 (1947). *See also*, 24 Am Jur2d 587, 616, Divorce and Separation §§ 464, 491.