Rudder's case argued May 31 on state's motion for reconsideration, reconsideration allowed; opinion (133 Or App 174, 889 P2d 1367) modified and adhered to as modified; Webb's case argued and submitted April 27, reargued May 31, reversed and remanded in part with instructions; otherwise affirmed September 27, 1995, Webb's petition for review allowed January 23, 1996 (322 Or 489)

STATE OF OREGON,
*Appellant,*

*v.*

SAMUEL ROBERT RUDDER,
*Respondent.*

(93NB1223; CA A82625)

903 P2d 393

44

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Andy Simrin, Deputy Public Defender, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender.

STATE OF OREGON,
*Respondent,*

*v.*

ROBERT LELAND WEBB, JR.,
*Appellant.*

(DCR93-13043; CA A83199)
(Cases Consolidated for Opinion Only)

Eric M. Cumfer, Deputy Public Defender, argued the cause for appellant. With him on the briefs was Sally L. Avera, Public Defender.

Janie M. Burcart, Assistant Attorney General, and Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. On the briefs were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Jonathan H. Fussner, Assistant Attorney General.

Before Riggs, Presiding Judge, and De Muniz and Leeson, Judges.

De MUNIZ, J.

Riggs, P. J., concurring.

## De MUNIZ, J.

The state moves for reconsideration of our decision in *State v. Rudder*, 133 Or App 174, 889 P2d 1367 (1995), on the ground that there has been a change in the statutes since our decision. ORAP 6.25(d). We allow reconsideration. The state requested oral argument on its motion for reconsideration. Defendant Rudder and defendant Webb then requested that *State v. Webb* be consolidated with *Rudder*. We consolidate the cases for opinion.

*Rudder* was before us on the state's appeal from a pretrial order granting Rudder's motion to dismiss the accusatory instrument charging him with menacing, a Class A misdemeanor. In 1993, the legislature amended ORS 161.635 to raise the penalty for a Class A misdemeanor from $2,500 to $5,000.[1] It made no amendment to ORS 46.040, which, since before 1953, limited jurisdiction of misdemeanors tried in district courts to those with fines that do not exceed $3,000. The district court dismissed the accusatory instrument here, holding that, under the 1993 amendment to ORS 161.635, the court lacked jurisdiction. We affirmed.

After our decision, the 1995 legislature enacted Oregon Laws 1995, chapter 16, sections 1-3 (Senate Bill 66), which took effect when the governor signed it into law on March 14, 1995. The bill amended ORS 46.040 by deleting the language in brackets:

> "District courts shall have the same criminal and quasi-criminal jurisdiction as justices' courts, and shall have concurrent jurisdiction with the circuit courts of all misdemeanors committed or triable in their respective counties [where the punishment prescribed does not exceed one year's imprisonment in the county jail or a fine of $3,000, or both such fine and imprisonment]. District courts shall have concurrent jurisdiction with municipal courts of all violations of the charter and ordinances of any city wholly or in part within their respective counties, committed or triable within their respective counties."

Section 2 of the bill provides:

---

[1] The effective date of that change was August 18, 1993. September 3, 1993, is the date of the offense for which Rudder was charged.

"Any exercise of jurisdiction by a district court over a misdemeanor on or after August 18, 1993, that did not meet the limitations imposed by ORS 46.040 (1993 Edition) is validated."

Rudder contends that the procedural posture of his case does not squarely present the retroactivity issues of Senate Bill 66. He reasons that, even if we were to determine that Senate Bill 66 validates district court actions, in *Rudder* the district court had dismissed the accusatory instruments; therefore, the district court had not exercised jurisdiction that could be "validated." The state argues that, irrespective of the retroactivity issue, in the interest of judicial economy, we should remand *Rudder*. It contends that, because there is no dispute that since March 14, 1995, the district court has had jurisdiction of Class A misdemeanors, and the state could now refile the charge in district court,[2] we should reverse the order of dismissal and remand for trial.[3] The state's argument, in essence, seeks a reversal of our holding in *Rudder*. We reject its position.

 The accusatory instrument was the pleading from which the district court determined whether it had jurisdiction. *See Dean et al v. First Nat'l Bank et al*, 217 Or 340, 349, 341 P2d 512 (1959) (jurisdictional power of a court to act is determined in the first instance from the complaint). In *Rudder*, because the accusatory instrument did not invoke the court's jurisdiction, the court had no authority to proceed further and was obligated to dismiss the accusatory instrument. *McEwen et ux v. McEwen et al*, 203 Or 460, 470, 280 P2d 402 (1955); *Greeninger v. Cromwell*, 127 Or App 435, 438, 873 P2d 377 (1994). We affirmed the dismissal. Even if Senate Bill 66, section 2, validates district court acts, there is no accusatory instrument before the district court on which it may proceed. *See State v. Wadekamper*, 68 Or App 750, 683 P2d 168 (1984) (district court lacked jurisdiction to accept a plea where the initial information charged defendant with felony).

___

[2] The state acknowledges that it could refile the menacing charge here because the statute of limitations has not run, jeopardy has not attached, and the pretrial dismissal is not a bar to refiling, because menacing is a Class A misdemeanor.

[3] The state's reliance on *State v. Yarbor*, 133 Or App 360, 891 P2d 703, *rev den* 321 Or 513 (1995), is misplaced. Jurisdiction was not an issue there.

■ *State v. Webb*, in contrast, does squarely present the retroactivity issues of Senate Bill 66. On February 2, 1994, following a bench trial, Webb was convicted of theft in the second degree, ORS 164.045, and attempted theft in the second degree, ORS 161.405. Theft in the second degree is a Class A misdemeanor. The offenses were committed on September 20, 1993, after the August 18 effective date for the 1993 amendments to ORS 161.635. Although Webb did not object at trial to the district court's lack of jurisdiction, he may raise lack of subject-matter jurisdiction for the first time on appeal. *Wilson v. Matthews*, 291 Or 33, 35 n 1, 628 P2d 393 (1981); *State v. Swikert*, 65 Or 286, 288, 132 P 709 (1913). Our holding in *Rudder* requires reversal of Webb's conviction for theft in the second degree unless, as the state argues, Senate Bill 66, section 2, applies to "validate" his conviction.

■ The state argues that the legislature intended retroactive application of Senate Bill 66 and that there is no constitutional bar to the legislature "validating" past district court proceedings. Webb agrees that the legislature intended Senate Bill 66 to apply retroactively. He argues, however, that a retroactive validation of an exercise of jurisdiction by a court that lacked subject-matter jurisdiction violates due process, separation of powers and *ex post facto* principles. We agree with Webb that Senate Bill 66, section 2, violates the separation of powers provision in Article III, section 1, of the Oregon Constitution. Accordingly, we do not address his due process arguments under the federal constitution, or his *ex post facto* arguments under both the state and federal constitutions. *State v. Kennedy*, 295 Or 260, 666 P2d 1316 (1983).

Article III, section 1, provides:

> "The powers of the Government shall be divided into three seperate (*sic*) departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

Under our constitutional system of government, the legislative, executive and judicial departments are required to function exclusively within their respective spheres. *U'Ren v. Bagley*, 118 Or 77, 81, 245 P 1074 (1926). When Article III, section 1, is invoked, the inquiry is whether one department is

exercising a function of another department of government. *Circuit Court v. AFSCME*, 295 Or 542, 547, 669 P2d 314 (1983).[4]

■ It is not an easy task to "determine with precision the boundary between the respective co-ordinate branches of our government * * *." *U'Ren*, 118 Or at 81. Thus, although determining that boundary is properly a judicial function, we are mindful that we must be cautious to hold that there has been an encroachment by one branch in the function of another only when there has been "a plain and palpable abridgment of the powers of one department by another." *Id.*

■ The Oregon Constitution gives the legislature the explicit authority to create courts inferior to the Supreme Court and the implicit authority to specify the jurisdiction of the courts and the manner in which such jurisdiction may be exercised. Amended Art VII, §§ 1, 2, and 2b (Original Art VII, § 9); *State v. Jones*, 30 Or App 873, 877, 569 P2d 19, *rev den* 280 Or 683 (1977). Under that authority, the legislature created district courts and may specify their jurisdiction.

■ In section 1 of Senate Bill 66, the legislature has drawn new jurisdictional lines. It is clearly within the legislature's power to create new rights for litigants and to mandate that legislation be applied retroactively.[5] But that is not what

---

[4] The provision also has been interpreted to prohibit the legislature from enacting laws that unduly burden or interfere with the functions of the judicial department. *Circuit Court*, 295 Or at 549; *Sadler v. Oregon State Bar*, 275 Or 279, 285, 550 P2d 1218 (1976); *Ramstead v. Morgan*, 219 Or 383, 399, 347 P2d 594 (1959). *See generally* Note, "Probing the Limits of Legislative Power to Regulate the Bar," 56 Or L Rev 387 (1978). That limitation on the legislature is not, however, implicated here.

[5] For example, in *A.K.H. v. R.C.T.*, 312 Or 497, 822 P2d 135 (1991), at issue was the legislature's power to enact legislation, ORS 12.117, that extended the statute of limitations in civil actions involving sexual abuse of children, and that applied the new limitations period retroactively, so as to revive actions previously barred under the former statute of limitations. The defendant challenged the retroactive application of the new limitation period on separation of powers grounds, arguing that the legislation constituted an impermissible interference by the legislature with the power of the judicial branch because " 'the Act is an attempt to mandate precisely how this matter pending before this Court should be resolved.' " *Id.* at 502. In rejecting the defendant's separation of powers argument, the court stated:

"It is a function of legislation to draw lines. We do not see how legislative awareness of the facts of a *particular* case that would fall within the terms of its enactment of a general law in any way changes the purely legislative nature of the enactment. Oregon Laws 1991, chapter 932, section 2, does not violate

has occurred here. Section 2 purports to "validate" the exercise of judicial power by district courts over Class A misdemeanors that the courts did not have under ORS 46.040. The statute creates no new rights for the litigants. Its sole purpose is to mandate that the judicial branch declare that judgments that were nullities at the time they were entered now have the force of law. In *Macartney v. Shipherd*, 60 Or 133, 117 P 814 (1911), the Supreme Court rejected similar "validating" legislation as violative of Article III, section 1.

In *Macartney*, the appellant filed his notice of appeal within six months of the date of an order denying his motion for a new trial, but nearly two years after the judgment had been entered. At the time the judgment and the order denying a new trial were entered, the pertinent statute[6] had been construed by the Supreme Court to provide that an order granting or denying a new trial was not an appealable order under the statute. However, two months after the appellant's notice of appeal was filed, and while the appeal was pending, the legislature enacted a bill, which provided:

"Every appeal heretofore taken within six months from the expiration of the time granted by any circuit court or judge thereof for filing a motion to set aside the verdict and for a new trial or, if such motion shall have been filed within such time, then within six months from the date of the entry of the order granting or denying such motion shall be and is, if such appeal is now pending and undetermined in the Supreme Court, hereby validated, and shall be deemed to have been taken within the time required by law. Provided, however, that nothing herein contained shall be deemed to authorize any appeal to be hereafter taken to the Supreme Court from any judgment of any circuit court granting or denying a motion to set aside the verdict and for a new trial unless such appeal be taken within six months from the date

_____

Article III, section 1, of the Oregon Constitution, in the manner argued by defendant." *Id.* (footnote omitted; emphasis in original).

[6] Lord's Oregon Laws, section 548, defined an appealable order:

"An order affecting a substantial right and which in effect determines the action or suit so as to prevent a judgment or decree therein, or a final order affecting a substantial right and made in a proceeding after judgment or decree, or an order setting aside a judgment and granting a new trial, for the purpose of being reviewed, shall be deemed a judgment or decree."

of the original entry of judgment." General Laws of Oregon, ch 143, § 1 (1911).

The appellant argued that his notice of appeal had been timely filed and that the court had jurisdiction to hear his appeal because, under the new statute, his appeal was "validated" by the legislature and "deemed to have been taken within the time required by law." The court rejected the appellant's argument, refusing to apply the new statute on the ground that it violated Article III, section 1:

> "The act in question does not profess to give to litigants any new right of appeal. It recites that there is doubt about the construction of the acts of the legislative assembly that have been already passed relating to appeals, and, based upon that alleged doubt, it proceeds to construe those previous enactments and to declare their meaning validating appeals, notices of which had been theretofore served. This is plainly an invasion of the judicial power by the legislative assembly, and is not admissible: *Sanders v. Cabaniss*, 43 Ala. 173; *In re Boylett* 136 N.C. 415 (48 S.E. 789: 67 L.R.A. 972: 103 Am. St. Rep. 944); *Lindsay v. United States Savings & Loan Company*, 120 Ala. 156 (24 South. 171: 42 L.R.A. 783).
>
> "The statute in question does not operate to extend the period for taking an appeal, or to include as an appealable order the action of the court in denying a motion for a new trial." *Macartney*, 60 Or at 143 (emphasis supplied).

The court's reasoning in *Macartney* compels a similar result here. The determination of whether jurisdiction has been properly exercised, according to the lines drawn by the legislature, is an adjudicatory function reserved solely to the courts. *See State ex rel v. Ellis*, 156 Or 83, 87, 66 P2d 995 (1937). As we construe ORS 46.040, district courts, for a period of time, did not have jurisdiction over Class A misdemeanors. That compels the conclusion that the district court judgments entered in such cases are void. Courts cannot judicially resurrect a judgment that never had life. *Wiles v. Wiles*, 211 Or 163, 170, 315 P2d 131 (1957). However, that is what section 2 instructs us to do. Like the legislation at issue in *Macartney*, the effect of section 2 is to mandate that the judicial branch construe and apply the law, not according to our judicial judgment, but according to the legislature's judgment. That kind of legislative mandate encroaches impermissibly on the adjudicatory power of the judicial branch, in

violation of Article III, section 1. Accordingly, we decline to apply section 2 of Senate Bill 66. We hold, consistently with *Rudder*, that the court did not have jurisdiction in Webb's case and that the judgment entered against him is void.

In *State v. Rudder*, CA A82625, reconsideration allowed, opinion modified and adhered to as modified. In *State v. Webb*, CA A83199, conviction for theft in the second degree reversed and remanded with instructions to vacate the conviction and dismiss the accusatory instrument; otherwise affirmed.

**RIGGS, P. J.,** concurring.

I agree with the lead opinion's disposition as to both defendants, and with all of its reasoning regarding defendant Rudder. I also agree in the main with its reasoning concerning defendant Webb (defendant) and, in particular, I agree that section 2 of Senate Bill 66 violates Article III, section 1, the separation of powers provision of the Oregon Constitution.

Having decided the case on that basis, the lead opinion does not reach defendant's arguments under the Due Process Clause of the Fourteenth Amendment to the U. S. Constitution or his arguments under the *ex post facto* provisions of both constitutions. The lead opinion explains its choice of the issue it treats as decisive by citing *State v. Kennedy*, 295 Or 260, 666 P2d 1316 (1983), where the Oregon Supreme Court articulated the general principle that the analysis of state constitutional issues should precede that of federal constitutional questions in the decision of cases.

Although I concur in the conclusion that the statute is contrary to the state separation of powers provision, I think that it is also clear — and possibly authoritatively clearer — that the statute violates federal due process requirements. *See, e.g., Scott v. McNeal*, 154 US 34, 46, 48, 14 S Ct 1108, 38 L Ed 896 (1894); *Hughes v. Aetna Casualty Co.*, 234 Or 426, 448, 383 P2d 55 (1963).

Normally, I would not write separately to make the point that one of two independent and satisfactory bases for a decision is equal or preferable to the one that a majority of my participating colleagues has selected as the decisional rationale. I do so in this case, because I question whether *Kennedy*

should be understood and applied as *dictating* the choice of rationales that the lead opinion makes here.

In my view, the policy choice the Supreme Court adopted in *Kennedy* and the resulting analysis assume, as necessary predicates, (1) that a party presents arguments that are based *solely* on parallel provisions of the two constitutions, *e.g.*, the communicative protections in Article I, section 8, and in the First Amendment, and (2) that, as applied to the facts, the effect of the two provisions is equally unsettled or there is a meaningful possibility that the state provision may be more protective of the right that the party asserts. Beyond that point, a rigid application of the "state first" principle becomes jurisprudentially problematic. In this case, the lead opinion treats *Kennedy* as requiring that arguments based on *any* state constitutional ground take precedence over arguments based on *any* federal constitutional ground, even when the state and federal provisions in question are not analogs and have wholly different purposes. I do not suggest that a choice to decide this case on separation of powers rather than due process grounds is not jurisprudentially proper and defensible; I do suggest that *Kennedy* does not *mandate* that choice.

The courts have a fundamental obligation to articulate the law, as necessary to the decision of cases, in accordance with reasoned judicial principles. Among those principles is that the law should develop incrementally, and only as necessary to the decision of particular cases; indeed, that "minimalist" proposition is the principal underpinning of *Kennedy* itself. It seems to me to be intrinsic to the performance of that judicial responsibility that the courts not be *required* to respond to an argument concerning a previously undecided state constitutional issue, with possibly sweeping ramifications, if the party asserting it would otherwise prevail under a settled federal constitutional principle on which the party also relies.

There is little likelihood that the anomaly described in the preceding paragraph would be encountered in a situation where the arguments involve analogous provisions of the two constitutions. However, the problem could readily arise when wholly dissimilar or unrelated provisions are involved.

To illustrate, if a party in a "speech case" urges an interpretation of Article I, section 8, and the same argument would prevail under United States Supreme Court interpretations of the First Amendment, the proferred interpretation of the Oregon provision would not be "sweeping" nor, under the Supremacy Clause, would it be *meaningfully* optional. A very different situation would be presented, however, if a defendant who would be entitled to prevail under existing federal due process authority urged in the alternative that the procedurally protected federal right should instead be recognized and protected in Oregon as a speech right under Article I, section 8.

Many labels, *e.g.*, "judicial economy," can be adduced in support of the underlying principle that this opinion espouses. At the heart of it, however, is that the courts should make law only to the extent necessary to decide cases. I understand *Kennedy* to be designed to promote that principle in a particular way, and not to establish a general mode of analysis that is inconsistent with it.