## IN THE OREGON TAX COURT
## MAGISTRATE DIVISION

David K. BLEASDELL
and Joan A. Bleasdell,
*Plaintiffs,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC-MD 030837C)

David K. Bleasdell, Plaintiff argued the cause *pro se*.

Serene Fung, Auditor, Department of Revenue, argued the cause for Defendant.

Decision for Plaintiffs rendered April 27, 2004.

**DAN ROBINSON, Magistrate.**

Plaintiffs David K. Bleasdell (David) and Joan A. Bleasdell (Joan) appeal an Oregon Department of Revenue Notice of Assessment of personal income taxes and interest for the 2001 tax year. Plaintiffs claim that David was not a resident of Oregon for that year.

## I. STATEMENT OF FACTS

Plaintiffs jointly own two properties in Grants Pass, Oregon, which they contracted to purchase in July 1999 while living in Reno, Nevada. Escrow closed on the properties February 3, 2000, and Plaintiffs moved their belongings from Nevada to Oregon by U-Haul in March 2000. David drove the U-Haul truck. One of the two properties Plaintiffs acquired is a 5.51 acre parcel with a house and a barn. Joan operates an unprofitable horse-breeding operation on the farm, and Plaintiffs' children help with the business. Plaintiffs' son Kurtis attends a community college in Oregon. The telephone bill for the Oregon farm is in David's name. After moving to Oregon, David obtained an Oregon Driver License on May 22, 2000. Plaintiffs jointly registered six vehicles in

Oregon, four in calendar year 2000 and two more in 2001. One of the vehicles registered in 2000 was a 2000 Ford Mustang that David subsequently moved to Florida. Additional vehicles were registered in Oregon in Joan's name alone. Plaintiffs have joint bank accounts in Florida and Nevada. The Florida account was opened in October 2000. There is no evidence of any Oregon bank accounts.

David is currently employed as Vice President of Aviation for S.T. Holdings, LLC, in Florida, as a corporate pilot based at Naples Municipal Airport, Naples, Florida. David initially worked for the company as a consultant, but was hired as a regular employee in December 2000. David's job function, both as a consultant and later as an employee, has been to pilot a private charter aircraft. David acquired employer-provided housing in Florida in September 2000 and subsequently purchased a condominium February 16, 2001, after he was hired as a company employee. David obtained a Florida Driver License in November 2001 and also registered to vote in Florida that month. David submitted a receipt showing his Mustang was registered in Florida in October 2003, and he testified the car was previously registered in that state. David also submitted a copy of a flight instructor certificate issued by the Federal Aviation Administration on March 30, 2003. That certificate shows David's address as Naples, Florida.

David provides for the family's entire financial needs. David transfers approximately $1,600 per week from the Florida account to the Nevada account for that purpose. Plaintiffs filed joint full-year Oregon resident returns in 2000 and 2001 and used their Oregon address on both returns. In 2001 David was with his family in Oregon for Thanksgiving and Christmas. The record is unclear as to the amount of time David spent in Oregon in calendar year 2000. In 2001 the parties agree that he was physically in Oregon for 30 days. According to Defendant's witness, David was not working for roughly two thirds of the 2001 calendar year.

## II. ANALYSIS

Oregon imposes a state income tax on every resident of this state and every nonresident with Oregon-source

income. ORS 316.037(1), (3).[1] David did not have Oregon-source income and, therefore, cannot be taxed by this state unless he was an Oregon resident.

■■     Oregon defines a resident as "an individual who is domiciled in this state." ORS 316.027(1)(a)(A).[2] Thus, residency is statutorily equated with domicile. Domicile is a common-law concept composed of two components: (1) "a fixed habitation or abode in a particular place" and (2) "an intention to remain there permanently or indefinitely." *dela Rosa v. Dept. of Rev.*, 313 Or 284, 289, 832 P2d 1228 (1992) (citing *Elwert v. Elwert*, 196 Or 256, 265, 248 P2d 847 (1952)) (internal quotations omitted). "Every person has at all times one domicil, and no person has more than one domicil at a time." *Zimmerman v. Zimmerman*, 175 Or 585, 591, 155 P2d 293 (1945) (citation omitted; internal quotations omitted); *see also* OAR 150-316.027(1)(a). Simply put, domicile is a person's "home." It is "the place an individual considers to be their true, fixed, permanent home. * * * An individual acquires a domicile by living there, even for a brief period of time, with no definite intention of moving. It is the place to which a person has the intent of returning after an absence." OAR 150-316.027(1)(a). The determination, although based on intent, must be established by all the facts and circumstances. *dela Rosa*, 313 Or at 289-90. Plaintiffs have the burden of proving by a preponderance of the evidence (more likely than not) that David was not an Oregon domiciliary in 2001. ORS 305.427.

---

[1] Unless noted otherwise, all references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 1999.

[2] "Resident" is defined by ORS 316.027(1)(a), in relevant part, as:

"(A) An individual who is domiciled in this state unless the individual:

"(i) Maintains no permanent place of abode in this state;

"(ii) Does maintain a permanent place of abode elsewhere; and

"(iii) Spends in the aggregate not more than 30 days in the taxable year in this state; or

"(B) An individual who is not domiciled in this state but maintains a permanent place of abode in this state and spends in the aggregate more than 200 days of the taxable year in this state unless the individual proves that the individual is in the state only for a temporary or transitory purpose."

## A.   *Did David Establish an Oregon Domicile?*

■         For purposes of its analysis, the court assumes Plaintiffs were originally domiciled in Nevada. Once domicile is established or determined to be in a particular location, it remains there until the person establishes a new domicile. *Doyle v. Doyle*, 17 Or App 529, 532, 522 P2d 906 (1974). For there to be a change in domicile, there must be: "(1) residence in another place, (2) an intention to abandon the old domicil, and (3) an intention to acquire a new domicil." *Elwert*, 196 Or at 265; *see also Davis v. Dept. of Rev.*, 13 OTR 260, 264 (1995).

■         Did David establish a "residence" in Oregon? The term residence as used in the three-part test is synonymous with abode or dwelling place. *Ramsey v. Dept. of Rev.*, 7 OTR 478, 481 (1978). "There is a general understanding that [abode] signifies a building or shelter which is the dwelling place of a person." *Id*. And, although an individual may have many residences (or abodes), he can have only one domicile at a time. *Id.*; *see also* OAR 150-316.027(1)(a). David had a residence in Oregon. Plaintiffs jointly own a five-plus acre farm in Grants Pass, purchased in February 2000, which they moved into the following month.

The next question is whether David had an intention to abandon Nevada as his old domicile. There is no evidence that Plaintiffs retained any ties to Nevada after they left that state, other than a single bank account. If they owned property in Nevada the court assumes it was sold because there is no evidence of any Nevada property. As of March 2000, David owned a farm in Oregon and worked out of Florida. The Florida contract employer offered David housing in September 2000 and he was hired by the company as a regular employee in December 2000. Although there were numerous Oregon activities after Plaintiffs moved to the Oregon farm in March 2000, there is no evidence that David spent any time in Nevada after he and the family left that state in March. The court therefore concludes that David abandoned his Nevada domicile.

The third and final question is whether David intended to acquire an Oregon domicile. That is admittedly a close call. The difficulty lies in ascertaining David's intent. As this court has previously observed, "[t]he intent to abandon

the old domicile and the intent to acquire a new domicile, locked in the individual's mind, may not have been attained with the problems of domicile consciously considered." *Hudspeth v. Dept. of Revenue*, 4 OTR 296, 298 (1971). According to the testimony, Joan was tired of the cold weather in Reno and wanted to move to Oregon because of the more moderate weather and because she grew up in this state.[3] David contends he simply helped with the move. David was a consultant to his current employer in Florida at the time of the move to Oregon and, after helping the family unpack the U-Haul, David insists he left the state to continue his employment in Florida. David argues he never established an Oregon domicile. However, that is a legal conclusion and the totality of the facts refute that claim.

Plaintiffs' overt acts in relation to the particular time at issue are most significant in determining domicile. *Hudspeth*, 4 OTR at 301. Factors that contribute to determining domicile include family, business activities, and social connections. OAR 150-316.027(1)(a). Plaintiffs' move to Oregon began in July 1999 when they jointly contracted to purchase two properties in Oregon; one of those was the five and one-half acre farm. They were living in Reno, Nevada, at the time. Escrow closed on the farm seven months later, in February 2000, and Plaintiffs moved to Oregon the following month. All of the family's personal effects were moved to Oregon. The family settled on the farm in March and Joan began operating a horse breeding business on that property. Plaintiffs' son enrolled in a community college near the farm. The telephone bill for the Oregon farm was put in David's name. David obtained an Oregon Driver License on May 22, 2000, roughly two months after the move. David was still working as a consultant for the Florida company, a position that is, by its very nature, temporary. He was not actually hired as a salaried employee until December 2000. David and Joan jointly registered six automobiles in this state within 19 months (or less), four in calendar year 2000 and two more in 2001.[4] One of the vehicles registered in 2000 was David's

---

[3] That testimony was introduced through David. Joan did not testify.

[4] The specific dates the vehicles were registered is not known. It is possible that all the vehicles had Oregon registrations by March 2001, within 12 months of the move. Defendant testified the vehicles were registered "in 2001."

2000 Mustang, which he subsequently moved to Florida. Plaintiffs filed a full-year Oregon resident return for the 2000 tax year. David's overt acts in Oregon—the purchase of a home, placement of the phone bill for the Oregon farm in his name, acquisition of an Oregon Driver License, and the registration of numerous vehicles in Oregon—lead the court to conclude that David intended to establish Oregon as his domicile. David had family and social connections with this state and, although he did have a business connection with Florida, he had no other connections there. David testified he generally flew the boss out of Naples on a Monday and returned with the boss on Friday, spending the work week in various states and occasionally overseas. However, the evidence is silent as to how often David flew during 2000 and the evidence is silent as to the amount of time David spent in Florida that year.

David testified that he only took the Oregon driver test to show Joan he could pass on the first try. That testimony was credible. David contends he registered his Mustang in Florida before the date shown on the receipt he submitted to the court, which is October 2003. The court questions that claim, but assuming that is the case, there is no evidence, testimonial or otherwise, that the Mustang was moved to Florida in 2000.[5] Moreover, proof that the Mustang was taken to Florida that year would not by itself alter the court's conclusion. If David truly intended to move from Nevada to Florida, it is difficult to understand why in calendar year 2000 he would get an Oregon Driver License, register six vehicles in his name in this state, and put the phone bill for the Oregon farm in his name, yet do so little to establish overt ties to Florida during that same time period. David had no place to live in Florida until September 2000 and did not open a bank account in that state until October of that year. David's only home between March and September 2000 was in Oregon. Taking David's overt acts into account, the

[5] The Florida registration expires November 12, 2004, and was thus valid for a period of 13 months. David's birthday is November 12. The court speculates that Florida schedules subsequent registrations to coincide with the registrant's birthday and that that was the initial registration, timed to tie that vehicle's registration renewal date to David's birthday. And, although the length of time a registration is valid in Florida is not known, it is likely good for 12 months or some multiple of 12.

court concludes that David abandoned his Nevada domicile and established an Oregon domicile in March 2000.

■  Although David insists he never intended to establish an Oregon domicile, any intent to establish domicile in Florida seems to have been contingent upon obtaining permanent employment in that state. It was not until after David was hired by the Florida company in December 2000 that he acquired property there, and he did not register to vote in Florida or obtain a Florida Driver License until November 2001, seven months after he bought a home there. The general rule is that "an intention to make a new location a permanent home at some future time or upon the happening of some contingent event does not change domicile." *Harlan v. Dept. of Rev.*, 10 OTR 497, 499 (1987) (citing *Oberhettinger v. Dept. of Rev.*, 4 OTR 62, 64 (1970)) (internal quotations omitted).

### B.  *Did David Abandon Oregon as His Domicile?*

Having found that David was domiciled in Oregon during 2000, the question now is whether he abandoned his Oregon domicile and acquired a Florida domicile before or during the 2001 tax year—the year in dispute. Again, the two general common-law components comprising the concept of domicile are (1) "a fixed habitation or abode in a particular place" and (2) "an intention to remain there permanently or indefinitely." *dela Rosa*, 313 Or at 289 (internal quotations omitted). Broadly speaking, the question is whether David considered Florida his "true, fixed, permanent home" and "the place to which [he] ha[d] the intent of returning after an absence." OAR 150-316.027(1)(a). Of course, applying the three-part test for determining whether a change in domicile occurred is the more precise way to analyze that question. That test asks whether there was: (1) a residence in a new place; (2) an intent to abandon the old domicile; and (3) an intent to acquire a new domicile. *Elwert*, 196 Or at 265.

As indicated above, a residence for purposes of the test is simply an abode. According to the administrative rule, an abode is any "physical building, structure, or vehicle in which the taxpayer lives and sleeps." OAR 150-316.027(1)(c). David obtained housing in Florida in September 2000, and in February 2001 David purchased his home in Naples, Florida.

Those facts show David had a residence in Florida as of September 2000. The case therefore comes down to the question of whether David intended to abandon his Oregon domicile and acquire a new domicile in Florida. The court is persuaded that he did, but it is a close call.[6]

■     Case law can be instructive in ascertaining intent, but only to a point because the outcome of each case is so heavily dependent on the facts and a slight variation can tip the scales in the other direction. Moreover, credible, persuasive testimony, as in *Hudspeth,* can drive the outcome, in spite of facts suggesting Oregon domicile. Having said that, the court finds three cases instructive.

The first is *Hudspeth,* where the Tax Court found the taxpayer did change domicile. Hudspeth was a lifelong Oregon resident who took over the family's lumber and cattle business, a business with interests both within and outside this state. *Hudspeth,* 4 OTR at 297. After two years of commuting between Oregon and Colorado, Ronald found it necessary to move closer to the lumber mill in Colorado. *Id.* In March 1965 Ronald and his wife and children moved briefly to Albuquerque, New Mexico, which was much closer to the mill and where Ronald had an established base. *Id.* After the oldest child completed the school year, the family moved to a mobile home in Pagosa Springs, Colorado, in June 1965. *Id.* Taxpayers returned to Oregon in June 1966 because the mill in Colorado was operating smoothly and the Prineville, Oregon, mill needed greater attention. *Id.* The dispute involved the taxation of the income earned outside Oregon between March 1965 and June 1966. *Id.* at 298. The court "was impressed by the character of the [taxpayers] and believe[d] that their evidence attest[ed] to a legal change of domicile." *Id.* at 301. That was in spite of the fact that

---

[6] It has been suggested by the Department of Revenue in other cases that where there is a "close call," a taxpayer should lose because he bears the burden of proof. That specific argument was not made in this case, but because the court has in this case declared this a close call, the point merits brief discussion. A "preponderance" of the evidence merely requires that a taxpayer present evidence that is more convincing. *Riley Hill General Contractor v. Tandy Corp.,* 303 Or 390, 394, 737 P2d 595 (1987) (citation omitted). The evidence need not be a lot more convincing, simply more convincing.

taxpayers left Oregon for only 16 months, did not sell the Prineville home when they left, and moved back into that home when they returned. *Id.* at 299. Moreover, during their absence taxpayers rented a home in Albuquerque and lived in a trailer in Colorado. *Id.* Additionally, Ronald continued his Oregon Elks Lodge membership, retained his Oregon voter registration and Oregon bank accounts, and paid his dues at the Prineville Golf Club. *Id.* Taxpayers did register a vehicle in Colorado and had a bank account in that state. *Id.* at 299-300.

■■■ The primary distinction between *Hudspeth* and the instant appeal is that in *Hudspeth* the whole family left Oregon, whereas here David moved to Florida by himself while his family remained in Oregon where they operated a business. In that respect, the taxpayer in *Hudspeth* had a stronger argument for a change in domicile, and that appears to have been a very close case. However, there are several other distinctions between the two cases that weigh in Plaintiffs' favor. Whereas Hudspeth was a lifelong Oregon resident who briefly left this state for employment reasons, David was not from Oregon and only briefly came to this state, for perhaps seven months in 2000, and spent portions of that time working out of Florida. Additionally, the Hudspeths owned a home in Oregon for many years before leaving the state and here Plaintiffs had just purchased property in Oregon, property acquired to meet Joan's needs for land to operate a horse breeding business. Moreover, Joan grew up in Oregon and her return was viewed as a homecoming. Not so for David. Having been permanently hired by the Florida employer in December 2000, David quickly bought a home in Naples, near the job, in February 2001. And, according to the testimony, David established a Florida bank account in October 2000. David subsequently obtained a Florida Driver License and registered to vote in Florida in November 2001. The evidence suggests David and Joan each had strong convictions about where they wanted to live and, as a result, Plaintiffs opted for a nontraditional marital arrangement, whereby they lived several thousand miles apart and saw each other only infrequently. At some point David moved his automobile to Florida and by October 2003 it was registered in that state.

Those steps show a movement away from Oregon to the Sunshine State[7] and suggest David abandoned his Oregon domicile and acquired a Florida domicile. And, as in *Hudspeth*, an important factor in the court's determination here is the persuasiveness and credibility of David.[8]

This case is to be contrasted with *Davis*, where the court found that the taxpayer "never took action to move to Alaska permanently." *Davis*, 13 OTR at 264. In that case, the taxpayer attempted to claim Alaska as her home in 1987, 1988, and 1989 because she was working full-time in Barrow as a school teacher roughly nine months out of the year. *Id.* at 262. The taxpayer's husband stayed in Oregon, where they had lived and owned a home for more than 30 years, and where he had an established business. *Id.* at 261. The taxpayer returned to Oregon for holidays and summer vacations and her husband visited her in Alaska only two times each year. *Id.* at 262. The taxpayer's Alaskan employer required her to live in a particular apartment, the cost of which was deducted from her paycheck. *Id.* She did not have an Alaska Driver License, nor did she have any vehicles in that state. *Id.* at 261. The taxpayer did register to vote in Alaska and had a bank account there. *Id.* at 264. The court found that "Donna never abandoned her domicile in Oregon and her intention to establish a domicile in Alaska was never realized." *Id.* at 265.

The primary distinctions between *Davis* and this case are that here David did not have longstanding connections to Oregon, and he bought a home in Florida. Additionally, David obtained a Florida Driver License and at some point owned a car registered in Florida.

The third case is *dela Rosa*. The tax year at issue in *dela Rosa* was 1982. *dela Rosa*, 313 Or at 288. There the taxpayer and his family were originally from the Philippines. *Id.* at 290. They came to Oregon in 1971. *Id.* The dela Rosas bought a home in Portland sometime after moving to this

---

[7] Nickname for the State of Florida.

[8] It is regrettable that Joan did not testify. Her statements would no doubt have rounded out the picture and provided additional insights into Plaintiffs' nontraditional arrangement.

state. *Id.* The taxpayer moved between different jobs in different states between 1971 and 1985. *Id.* During that time period, the taxpayer's wife and two children remained in Oregon and lived in the Portland home, except for a period of about two years between 1977 and 1979 when the taxpayer was transferred by his employer to Alabama. *Id.* The taxpayer's family moved with him to Alabama, where they bought a home. *Id.* They did not sell their Portland home and, in 1979, when the taxpayer was transferred to Wyoming, his family returned to Oregon. *Id.* The taxpayer and his wife subsequently purchased another home in Portland closer to their children's school. *Id.* While living in Wyoming, the taxpayer flew home to visit his family every six weeks. *Id.* The taxpayer resigned from the job in Wyoming in December 1981 and found a job nearer to the family, in the State of Washington, where he worked until March 1983. *Id.* The taxpayer was in Oregon between March and September 1983 collecting unemployment. *Id.* During the tax year in question (1982), the taxpayer was working in Washington and regularly visited his family in Oregon. *Id.* at 291. The taxpayer had an Oregon Driver License in 1982 and signed an affidavit that year stating his permanent residence was in Portland. *Id.* Additionally, the taxpayer and his wife filed a joint Oregon personal income tax return that year. *Id.* In affirming the decision of the Tax Court, which found that the taxpayer was domiciled in Oregon in 1982, the Oregon Supreme Court found that the "taxpayer demonstrated a pattern of returning to Oregon from his various places of employment" and that before, during, and after the tax year at issue the taxpayer owned two homes in Oregon, but generally rented while living elsewhere. *Id.*

The instant case has many similarities to *dela Rosa*. In each case the move to Oregon was motivated by the wife's employment,[9] the families stayed in Oregon while the husbands went to work elsewhere, and the taxpayers in each case filed a joint Oregon income tax return for the year in question. David has an explanation for the Oregon resident

---

[9] It is true that Joan Bleasdell chose Oregon because she was raised in this state, but she appears to have been intent on starting the horse breeding business here from the time search for a residence commenced.

return and there are several key distinctions between the two cases. David explained that the original Oregon return was prepared by a professional in California and he simply accepted the preparer's decision that they file as full-year Oregon residents. David thereafter attempted to file an amended return but that return was rejected by the Department of Revenue pursuant to OAR 150-316.122(3), which provides that the "election to file a joint state return may not be revoked after the due date of the return for the tax year." David urges the court to overlook the residency election on the state return. As for the distinctions, the husband in *dela Rosa* moved about between different states generally living in rented housing, whereas here David went to one state—Florida—and bought a condominium there. And, unlike *dela Rosa*, David has not demonstrated a pattern of returning to Oregon. Additionally, David obtained an out-of-state license (although not until the latter part of the tax year at issue) and *dela Rosa* continued to use his Oregon Driver License for more than 10 years.

A few additional observations are in order. If David did not intend to abandon his Oregon domicile there were cheaper ways he could have lived in Florida, such as renting an apartment. It is troubling that David registered two vehicles in his name in Oregon in 2001, but only mildly so. There are a number of reasons why he might have wanted those vehicles registered in his name, the most obvious being insurance considerations. As for the Oregon full-year resident return, the court accepts David's explanation that he relied on the preparer's advice. In the end, the court was swayed by David's testimony, which was credible and persuasive except perhaps for the testimony related to the timing of the registration of the Mustang, and the court's skepticism on that point is based on speculation.

The court believes David intended to make Florida his home and took immediate action to realize that goal once the job became permanent. "An individual acquires a domicile by living there, even for a brief period of time, with no definite intention of moving. It is the place to which a person has the intent of returning after an absence." OAR 150-316.027(1)(a). That description describes David's situation in 2001.

■     The more difficult problem is fixing a date upon which the move became final and David can be said to have abandoned the Oregon domicile and acquired the Florida domicile. People do not generally order their lives with tax consequences in mind (although it is not unheard-of) and, although the law requires it, there is not always a precise date upon which an incremental move such as what occurred in this case can be said to have been completed. Between March and September of 2000, David's substantial ties were with Oregon, the consulting job in Florida notwithstanding. The Florida contractor offered David housing in September 2000 and David accepted. He opened a bank account in Florida one month later (in October). In December 2000, David was hired as a regular employee. At that point David was living and working in Florida, although his family was in Oregon and David's right to drive a motor vehicle was still conferred by this state. David began looking for a home in Florida and purchased a condominium on February 16, 2001. "Typically the purchase of a home coupled with a job in a given locale is sufficient to establish domicile in that state." *Backman v. Dept. of Rev.*, 16 OTR-MD 156, 162 (1999). There are, of course, many factual nuances that can change that conclusion, but the above are often strong indicators of domicile. The court concludes that upon purchasing the Florida residence in mid-February, David abandoned his Oregon domicile and established Florida as his domicile. Accordingly, David was a part-year Oregon domiciliary for the 2001 tax year.

## III.  CONCLUSION

IT IS THE DECISION OF THE COURT that David was an Oregon part-year resident in 2001, until February 16 of that year, and shall be taxed accordingly.