DECISION
Plaintiffs appeal Defendant's denial of their amended Oregon state income tax returns for tax years 2006 and 2007, and Defendant's denial of 2006 claimed deductions for one of Plaintiffs' rental properties. A trial was held in the Oregon Tax Courtroom, Salem, Oregon, on September 8, 2010. Charles Dane (Charles) and Louise Dane (Louise) testified on their own behalf[1] Defendant was represented by Darren Weirnick, Assistant Attorney General. Ron Graham (Graham), auditor, testified on behalf of Defendant.
In its Amended Answer, filed August 17, 2010, Defendant raised the affirmative defense of issue preclusion. Defendant verbally withdrew its affirmative defense at the conclusion of trial. Defendant also requested damages under ORS 305.437 in its Amended Answer.
Defendant filed a Motion in Limine to Exclude Plaintiffs' Exhibits on September 2, 2010. Defendant alleged that Plaintiffs' Exhibits 12 through 14 were postmarked less than 14 days before the trial date, citing Tax Court Rule-Magistrate Division (TCR-MR) 10C(1). At trial, Plaintiffs offered some of the exhibits Defendant requested excluded as rebuttal evidence. *Page 2 
Defendant's Motion in Limine to Exclude Plaintiffs' Exhibits for Plaintiffs' case in chief is granted.
Plaintiffs' Exhibits 1 through 8, 10 and 11 and Defendant's Exhibits A-3 through A-6, A-8 through A-13, A-17, B-3 through B-5, B-7 through B-14, C-1 through C-3, C-6, D-6, D-7, E-1 through E-7, F-1 through F-4, G-1, G-3, G-4, G-6, G-7, H-1, H-3 through H-5, I-11, J-1 through J-4, K-1, and L-1 were admitted without objection.
 I. STATEMENT OF FACTS
For tax years 2006 and 2007, Louise testified that she was a full year Oregon resident. For tax years 2006 and 2007, Charles testified that he was a full year Nevada resident.
For tax years 2006 and 2007, Plaintiffs testified that they jointly owned residential property located in Corvallis, Oregon, and real property identified as seven month-to-month rentals, and one other property primarily used by Plaintiffs in Waldport, Oregon. Charles testified that after 2002, [2] Plaintiffs managed and maintained the rental properties. He testified that "[a]fter retiring from OSU, the only time I am at the Waldport rentals is to do maintenance. (Ptlfs' Ex 3-1) Louise handles the people." Charles testified that it takes "more than half a week to do maintenance." He testified that Plaintiffs should be allowed to deduct the following expenses incurred at 910 Waziyata, Waldport, Oregon, even though that property was not rented in tax years 2006 and 2007:
 Rental cleaning and maintenance expenses: $306;
 Insurance: $359;
 Other interest: $50;
 Taxes: $2,130;
 Utilities: $550; and
 Depreciation: $1,276 *Page 3 
(Ptfs' Ex 8-1.) Charles cited "IRS Publication 17 for 2006 2007" and "IRC 212" to support Plaintiffs' claimed deductions. (Ptfs' Ex 3-1.) He testified that the cost "to turn off" and reconnect water service "exceeds the annual water charge." (Ptfs' Ex 10.) Charles testified that the telephone is connected to an "answering machine [so that] renters can call and leave messages." He testified that the "answering machine" can be accessed by "cell phone." Graham testified that he allocated and allowed 51 percent of some deducted expenses, including insurance, utilities and depreciation, and he transferred property taxes to federal form Schedule A.[3] Graham testified that Defendant allowed $111 labeled "rental yard expense. (Ptfs' Ex 8-1.)
Louise testified that Plaintiffs recently (July 2009) purchased a home in Nevada. Charles testified that, when he was in Nevada during the tax years before the court, he lived in his daughter's (Linda) house with her and his grandson, Kyle, and had the "use of the whole house." Charles testified that, after hearing that Linda was "given a preliminary diagnosis of multiple sclerosis (MS)," he retired in 1994 "from Oregon State University and moved into her house[,] * * * moving/purchasing(p) furniture etc." (Ptfs' Ex 2-1.) Charles agreed with Defendant's counsel that he physically was in Oregon 192 days in 2006 and 167 days in 2007.[4] (Def's Ex B-9, B-13.) Louise testified that Charles usually drove to Nevada and always returned to Corvallis, not Waldport. Charles testified that when he is in Oregon he uses two vehicles, "the van [and a] Buick," registered to Louise for his travel between Corvallis and Waldport. *Page 4 
Charles testified that he surrendered his Oregon driver license in 1999, is "no longer an Oregon voter," and, since 1999, his "energy [has been] focused [on] formal actions" to evidence his Nevada domicile. Charles testified that he has had a Nevada driver license "since July 30, 1999" and has a Nevada library card. (Ptfs' Ex 4.) He testified that he registered a car in Nevada. Charles testified that he "surrendered [his] Oregon land surveyor's license * * * [and] Oregon Professional Engineers license." (Ptfs' Ex 2-2.) He testified that he has no "professional ties to Oregon." Charles testified that he was "investigating the possibility of advising retirees on IRA and pension tax implications on a fee basis" in Nevada. (Id.)
In reciting "Dane's Financial History," Charles testified that he and Louise "have never co-mingled our investments or bank accounts * * * allowing income from our separate property to remain separate." (Ptfs' Ex 1.) Charles and Louise own a joint Oregon checking account. (Id.) Charles testified that the rental income is deposited into the joint account and the rental expenses are paid from the joint account. He testified that "he was removed" from the "Citizen Bank account after October 2008." Charles testified that Louise has "her own Discover credit card" and Charles has "his own CitiBank credit card."[5] Charles "opened a sole [Nevada] checking account" and received a "free post office box in Stateline" after the US Post Office "verif[ied his] Stateline residence." (Ptfs' Ex 2-1.) Charles acknowledged that he receives mail addressed to him, including letters and payment requests from Social Security Administration, Advisor Asset Management, property tax statements and utility bills, at his Corvallis home as well as his Nevada home. (Seee.g., Def's Ex A-6.) Charles acknowledged that Plaintiffs' state income tax return, which was a joint return, "used Louise's [Corvallis] address" and the federal income tax return "used the Stateline, Nevada address." (Def's Ex A-10; F-3.) *Page 5 
Charles testified that "[i]n 2000 or 2001, * * * [he] applied [to receive] medical benefits" from the Veterans' Administration clinic located in Gardnerville, "20 miles away" from his Stateline residence. (Ptfs' Ex 2-2.) In response to Defendant's questions, Charles testified that he received medical and dental treatment from "long-time" health providers located in Corvallis and Albany.
Charles testified that his social contacts in Nevada include knowing his neighbors "superficially" and he is involved in raising his grandson. He testified that he knows his grandson's teachers and school secretaries. Louise testified that she, too, is active in raising their grandson and, in tax years 2006 and 2007, she spent "months" in Nevada. When she was in Nevada, Louise testified that she stayed at her daughter's home. Charles acknowledged that he attended one basketball game (Oregon State University v. University of Oregon) in March 2006 at the Oregon State University campus. He testified that, beginning January 18, 2008, he began serving a "2-year term" on the Douglas County, Nevada, Parks and Recreation Commission. (Def's Ex D-7 at 1.)
Graham testified that Plaintiffs' 2006 and 2007 Oregon state income tax returns were amended to "remove all of Charles's income from adjusted gross income." (Def's Ex E-2; F-2.) Graham testified that Plaintiffs' amended returns were denied because "after looking at 40 different factors," he concluded that Charles "never abandoned Oregon" and Charles was domiciled in Oregon for tax years 2006 and 2007.
 II. ANALYSIS
Oregon imposes a state income tax on every resident of this state and every nonresident with Oregon-source income. ORS 316.037(1), (3).[6]
Oregon defines a "resident" as "[a]n *Page 6 
individual who is domiciled in this state * * *." ORS 316.027(1)(a)(A). Thus, residency is statutorily equated with domicile. Domicile is a common-law concept composed of two components: (1) "a fixed habitation or abode in a particular place" and (2) "an intention to remain there permanently or indefinitely." dela Rosa v. Dept. of Rev. (dela Rosa),313 Or 284, 289, 832 P2d 1228 (1992) (internal quotation marks omitted). Oregon Administrative Rule (OAR) 150-316.027(1)(1)(a) defines "domicile" as "the place an individual considers to be the individual's true, fixed, permanent home" and as "the place a person intends to return to after an absence."[7] While an individual can have more than one residence, he "can have but one domicile." dela Rosa, 313 Or at 289
(internal quotation marks omitted).
A. Domicile
Plaintiffs do not dispute that Charles was at one time domiciled in Oregon. Rather, Plaintiffs contend that, no later than 2005, Charles changed his domicile from Oregon to Nevada. Thus, the question before the court is whether Charles changed his domicile from Oregon to Arizona.
To effect a change of domicile, "three elements are necessary: (1) the person must establish a residence in another place; (2) form an intent to abandon the old domicile; and (3) intend to acquire a new domicile."White v. Dept. of Rev., 14 OTR 319, 321 (1998) (internal quotation marks omitted). Given the inherent difficulties in ascertaining intent, "triers of the fact of domicile rely heavily upon the overt acts of the individual as true indicators of his state of mind. Nevertheless, the whole aim of the inquiry is to discern the true intent." Hudspeth v.Dept. of Revenue (Hudspeth), 4 OTR 296, 298-99 (1971). Thus, "determination of an individual's domicile is based on intent supported by facts and circumstances rather than merely *Page 7 
the statements of the individual." Butler v. Dept. of Rev. (Butler), TC-MD No 050801D, WL 2041284 at *4 (July 18, 2006). Factors contributing to a determination of domicile "include family, business activities[,] and social connections." OAR 150-316.027(1)(1)(a). Plaintiffs have the burden of proving by a preponderance of the evidence that Charles was not an Oregon domiciliary in tax years 2006 and 2007. ORS 305.427.
B. Residence in Nevada
"[A] residence for purposes of the [three-part] test is simply an abode. * * * [A]n abode is any `physical building, structure, or vehicle in which the taxpayer lives and sleeps.'" Bleasdell v. Dept. of Rev.
(Bleasdell), 18 OTR-MD 354, 361 (2004) (citation omitted). There is no question that Charles had established a residence in Nevada by 2006. Indeed, he established a residence in Nevada as early as 1999 when he began sharing his daughter's residence. See, e.g., Butler, WL 2041284 at *4 (Plaintiff "established a residence in Virginia when she rented an apartment").
C. Intent to abandon an Oregon domicile
Charles maintained numerous ties to Oregon during the tax years at issue, casting doubt on whether Charles formed the requisite intent to abandon his Oregon domicile. Charles's ties to Oregon included his joint ownership interest in a home in Oregon where his wife continued to reside. He continued to maintain his joint ownership in rental properties that he maintained and, along with Louise, managed. Charles retained joint checking accounts at an Oregon bank. He availed himself of medical services in both Nevada and Oregon and received mail at both his Nevada post office box and his Corvallis personal residence. Finally, he often visited Oregon to be with his wife. For tax years 2006 and 2007, the number of days Charles was in Nevada was *Page 8 
less than in prior tax years and, conversely, Charles was in Oregon more than in prior years.[8] There was no substantial change in Charles's ties to each state, Oregon and Nevada, during the tax years at issue, other than Charles spent more time in Oregon.
Lingering connections to Oregon have not prevented this court in past cases from concluding that a taxpayer effected a change in domicile. InHudspeth, the taxpayers
 "did not sell their home in Prineville, [Oregon], * * * the husband continued his Oregon Elks Lodge membership, * * * his Oregon voting registration remained on the books, * * * he maintained a bank account in Prineville, * * * he paid dues at the golf club in Prineville, * * * he purchased no home in * * * New Mexico, and made use of a mobile home in * * * Colorado."
Hudspeth, 4 OTR at 299. The taxpayer-husband in Hudspeth testified that he had tried to sell his Oregon home but found no takers, that he "did not vote by absentee ballot during his absence," and that he "had no time to take care of or give consideration to minor matters such as shifting bank accounts, cutting down on dues payments, and the like." Id. at 300. The court accepted his explanations and concluded that the taxpayers had effected a change of domicile. Id. at 301.
Unlike the taxpayer-husband in Hudspeth, it appears that Charles retained several of his connections to Oregon largely because he did not want to sever his ties to Oregon. Because he was retired and not employed, Charles had time to "take care of or give consideration to" such matters. Charles made a conscious decision to maintain his connections to Oregon and, therefore, intentionally did not abandon his Oregon domicile. *Page 9 
D. Intent to acquire a Nevada domicile
"Typically, the purchase of a home coupled with a job in a given locale is sufficient to establish domicile in that state." Backman v. Dept. ofRev., 16 OTR-MD 156, 162 (1999).[9] Charles did not purchase a home in Nevada until 2009 and he had neither employment in nor professional ties to Nevada during the tax years at issue.
By 2006, Charles had established few substantial connections to Nevada. When in Nevada, Charles occupied a bedroom in his daughter's house. Charles paid no rent; he voluntarily paid a portion of his daughter's utility bills and contributed to other living expenses. For the tax years at issue, much of Charles's personal property and his jointly owned real property were located in Oregon. Charles's ties to Nevada, including a Nevada driver license, one vehicle licensed in Nevada, a bank account and a free post office box, were few in comparison to his numerous ties to Oregon and are easily reversed or terminated.
E. Rental Expenses
In evaluating Defendant's proposed adjustments to Plaintiffs' claimed rental expense deductions for 910 Waziyata, Waldport, Oregon, the court follows ORS 305.575, which provides in pertinent part that:
 "In an appeal to the Oregon Tax Court from an assessment made under ORS 305.265, the tax court has jurisdiction to determine the correct amount of deficiency, even if the amount so determined is greater or less than the amount of the assessment determined by the Department of Revenue, and even if determined upon grounds other or different from those asserted by the department, provided that claim for such additional tax on other or different grounds is asserted by the department before or at the hearing or any rehearing of the case before the tax court." *Page 10 
Defendant concluded that the "unit [910 Waziyata] was never rented out" and that a portion, 49 percent, "was used as a personal residence." (Ptfs' Comp at 7,8.) There is no dispute that 910 Waziyata was not "rented out" during tax years 2006 and 2007. Plaintiff mistakenly concluded that when he occupied 910 Waziyata and was performing maintenance, even if not on that property, his use could not be classified as personal. The number of days a property is used for personal use excludes those days "on which the principal purpose of the use of the unit is to perform repair or maintenance work on [that] unit." IRC Proposed Reg 1.280A-1(e)(6). Plaintiffs were not performing "repair or maintenance work on [that] unit." Charles was performing "repair or maintenance work on" other property that was rented. Plaintiffs concluded that "[i]t was less inconvenient and less expensive to keep" 910 Waziyata "vacant so we could use when we were at the coast doing maintenance and management." (Def's Ex B-13 at 3.) Unfortunately, Plaintiffs' failure to rent 910 Waziyata and use of that property as a convenient and less expensive location when performing maintenance on other rental properties does not meet the Internal Revenue Service regulations. The court accepts Defendant's determination that Plaintiffs' personal use of 910 Wazlyata was 49 percent and Defendant's allocation of the claimed rental expenses between personal and business is accepted for tax year 2006. In addition, the same allocation of Plaintiffs' claimed rental expenses between personal and business must be determined for tax year 2007. See
ORS 305.575.
 III. CONCLUSION
Charles did not change his domicile by 2006 or 2007. Even though Charles had (1) clearly established a residence in Nevada, Charles had not (2) formed the intent to abandon his Oregon domicile, as demonstrated by his continuing permanent connections with Oregon nor (3) had he formed the intent to adopt a Nevada domicile, as demonstrated by his few business *Page 11 
activities and non-binding connections to Nevada. For the tax years at issue, Charles's connections to Oregon are more numerous and permanent than Nevada. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied;
IT IS FURTHER DECIDED that Defendant's conference rental expense adjustment for tax year 2006 is accepted and the same allocation between business and personal use shall be made for tax year 2007;
IT IS FURTHER DECIDED that Defendant's Motion in Limine to Exclude Plaintiffs' Exhibits is granted; and
IT IS FURTHER DECIDED that Defendant's request for ORS 305.437 damages is denied.[10]
Dated this ___ day of February 2011.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Presiding Magistrate Jill A. Tanner onFebruary 2, 2011. The Court filed and entered this document on February2, 2011.
[1] When referring to a party in a written decision, it is customary for the court to use the last name. However, in this case, the court's Decision recites facts and references to two individuals with the same last name, Dane. To avoid confusion, the court will use the first name of the individual being referenced.
[2] Plaintiffs' Exhibit 3-1 states that "[o]n September 8, 2003, after 35 years, Bayshore Rental discontinued handling our rentals."
[3] Graham testified that, for tax year 2006, Plaintiffs did not itemize their deductions; they claimed "the standard deduction."
[4] Plaintiffs' email response to Defendant's attorney dated August 1, 2010, states that Plaintiffs' rental diary shows "a total of 240 days in Oregon" for tax year 2006 and "a total of 175 days in Oregon" for tax year 2007. (Def's Ex B-13 at 1.) Those total days include an unspecified number of days when "Chuck was not there." (Id.)
[5] In Louise's deposition dated April 23, 2007, Louise stated that she thought Citibank was her credit card and that she and Charles "both use[d] the Discover card." (Def's Ex L-1 at 41-42.)
[6] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) are to 2005 and 2007, which are identical as to the statutes referenced.
[7] Unless otherwise noted, all references to the Oregon Administrative Rules (OAR) are to 2001 and 2003, which are identical as to the rules referenced.
[8] Plaintiffs argued the domicile issue in this court in tax years 1999, 2000, 2001 and 2002. Dane v. Dept. of Rev., TC-MD 040084F, WL 2640502 (Oct 28, 2004) and Dane v. Dept. of Rev. (Dane II), TC-MD 050867A, WL 1375109 (May 19, 2006.) In Dane II, Charles's "annual time in Oregon" was "on the order of 125 to 130 days." WL 1375109 *1. For the years at issue, Charles spent more time in Oregon than was reported for tax years 2001 and 2002 and, for those years (2001 and 2002), the court concluded that Charles was an Oregon domiciliary.
[9] For instance, in Bleasdell, the court found that the taxpayer-husband had abandoned his Oregon domicile and acquired a Florida domicile when he obtained employment and purchased a condominium in Florida. Bleasdell, 18 OTR at 354, 356-357. The court reached this conclusion despite the fact that the taxpayer-husband's wife and children remained at their Oregon home ("a 5.51 acre parcel with a house and a barn"). Id. at 355.
[10] Defendant offered no evidence at the trial to support its request.