IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| THOMAS B. HAMLIN, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 230278N |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiff appealed Defendant's Notice of Assessment, dated March 21, 2023, for the 2016

tax year. (Def's Ex A.) A trial was held by remote means on April 22, 2025. Kevin O'Connell,

an Oregon attorney, appeared on behalf of Plaintiff. Plaintiff; Matthew Keller (Keller), an

Oregon attorney and CPA; and Donald Leavitt (Leavitt), CPA, each testified on behalf of

Plaintiff. Ling Cai (Cai), auditor, appeared and testified on behalf of Defendant. Neither party

submitted exhibits in accordance with Tax Court Rule-Magistrate Division (TCR-MD) 12, but

the court ultimately accepted Plaintiff's Exhibits 1 and 2 over Defendant's objection. The court

accepts Defendant's Exhibits A to E in this case, and A to M in a related case, *Somerset Security*

*Inc., fka Bay Colony Securities Co. Inc. v. Department of Revenue*, TC-MD 210351N.[1]

---

[1] This and two related cases were previously scheduled for trial in February 2024, and the parties submitted exhibits in January 2024 in advance of that trial. Plaintiff requested to reschedule the February trial to July 2024 and the court granted that request. Plaintiff later asked for a continuance of the July 2024 trial for a variety of reasons, including the possibility of resolving some of the pending issues. The court continued the July 2024 trial upon the parties' agreement to participate in court-assisted mediation. The mediation resulted in settlement of two of the three pending cases and resolution of all but one issue in this case. Thereafter, the court scheduled trial in this case for April 22, 2025, a date selected by the parties in December 2024.

Neither party timely exchanged new exhibits in advance of the April 22, 2025, trial. Plaintiff filed its two exhibits on April 22, 2025, and Defendant filed no new exhibits, instead referring to exhibits previously filed in this case and in related case TC-MD 210351N. TCR-MD 11 A states that "Any evidence the parties want considered must be filed with the court and exchanged with all other parties as an exhibit *even if it was already* presented in a prior administrative hearing or *submitted with an earlier pleading or document*." (Emphasis added.) TCR-MD 12.2 B(1)(a) states that "all exhibits must be either postmarked at least 14 days before the trial date or received by the court and all other parties at least 10 days before the trial date." Even though neither party complied with the court's

## I. STATEMENT OF FACTS

Plaintiff testified that he is a "financial planner, wealth manager, and retirement planning specialist" who owns "several companies." As of 2016, those companies were: Somerset Securities, formerly known as Bay Colony Securities, a securities "broker-dealer" organized as a C corporation, of which Plaintiff was the sole shareholder; two passthrough LLCs, Somerset Wealth Strategies and Somerset Wealth Management, through which he engaged in a "non-securities fixed insurance and annuity business"; and Somerset Holdings Group, an S corporation that served as a holding company for the passthrough LLCs, of which Plaintiff was a 95-percent shareholder. (Def's Ex E at 10.) Each entity had its own bank account, but nothing was ever paid directly to the holding group. Plaintiff testified: "Somerset securities will pay me, and then I'll push it up to Somerset Holdings group where it pays bills from there."

A.    *Somerset Securities Return, Payments to Plaintiff*

Plaintiff testified that, when he purchased Somerset Securities in 2013 or 2014, it had everything in place: a financial operations person who tracked the QuickBooks; a regulatory compliance group; and a CPA, Kari Brace, who had a "special certification" to prepare Form 1120. For the 2016 tax year, Brace filed that form on March 14, 2017. (Def's Ex E at 1, TC-MD 210351N). It reported gross receipts of $892,316 and officer compensation of $658,693. (*Id.* at 1, 6.) Plaintiff testified that he had seen the return and knew the amount of officer compensation it reported. Plaintiff testified that Brace did not issue him a Form 1099.[2] He learned "maybe three years ago" that she was sanctioned for that failure. Plaintiff testified that Brace has been completely uncooperative and out of communication.

---

exhibit exchange rule, the court finds that neither party is prejudiced by consideration of the exhibits because they had all been previously exchanged as exhibits or provided through informal discovery.

[2] Nor did the corporation issue Plaintiff a Form W-2. (*See* Def's Ex L at 1, TC-MD 210351N.)

In 2018, Defendant opened an audit of Somerset Securities for the 2016 tax year. (Def's Exs B, C at 14, M, TC-MD 210351N.) Cai met with Plaintiff's former CPA, Bob Faler, on February 22, 2019,[3] and told him that "the corporation paid [officer] compensation to Tom Hamlin but did not issue [a] W2 or 1099 to him." (Def's Ex M at 5-6, TC-MD 210351N.) Defendant sent a letter to the corporation requesting that it file information returns within 30 days. (*Id.*) Cai met with Faler and Leavitt on February 27, 2020, during which she "[t]old them that the company can't get the deduction because a W-2 or 1099 was not issued to Tom." (*Id.* at 1.) On March 5, 2020, "Bay Colony Securities Co., Inc. dba Somerset Securities" made an iWire submission including a Form 1099-Misc reporting total non-employee compensation to Plaintiff of $962,692.92 for the 2016 tax year. (Def's Ex J at 4, TC-MD 210351N.)

Somerset Securities 2016 General Ledger lists "Commissions/Hamlin" totaling $658,692.92 and payments to Somerset Holdings totaling $63,500. (Def's Ex L at 1-6, TC-MD 210351N.[4]) Cai performed a bank deposit analysis of the corporation's 2016 account and found that "a total of $990,744 was transferred out of [the] business checking account which included $900,300 transferred to [Plaintiff's] personal checking account and $90,444 to the entities that [he] owns * * *." (Def's Ex B at 5-6, Ex L at 7, TC-MD 210351N.[5]) She determined "$658,693 * * * was required to be reported as wages" to Plaintiff and "reclassified" the other transfers as dividends to Plaintiff. (Def's Ex B at 6, TC-MD 210351N; *see also* Def's Ex B at 3-4 (notice of deficiency describing corresponding adjustment to Plaintiff's personal return).)

---

[3] The meeting took place at Keller's office, though Keller did not participate because he did not have a POA. (Def's Ex M at 5, TC-MD 210351N.)

[4] One copy of the General Ledger is identified as "accrual basis" and another is "cash basis," though they appear to list the same amount of commissions to Plaintiff. (Def's Ex L at 3-6, TC-MD 210351N.)

[5] The exhibits include the corporate bank statements from 2016. (Def's Ex L at 8-54, TC-MD 210351N.)

Cai asked Plaintiff if he acknowledged receiving $990,744 from Somerset Securities, and he responded that "there was a large amount of money * * * that was moved from the broker-dealer" but he "move[d] money over to cover expenses" and paid himself last. He stands by "whatever the tax returns say."

B.      *Personal and S Corporation Return*

Plaintiff testified that Keller prepared both his personal and S corporation returns for the 2016 tax year. (*See also* Def's Exs C, E (returns).) The returns are undated, but Keller testified that he prepared them in 2020. Keller testified that, to prepare Plaintiff's personal return, he used the available Form 1099s and a QuickBooks summary provided by Leavitt, reflecting all payments from Somerset Securities to either Plaintiff or Somerset Holdings. He was aware Plaintiff had acquired Somerset Securities, but never communicated with Brace or received anything from her. Keller could not recall if he had a copy of its Form 1120 at the time of preparing Plaintiff's personal or S corporation returns. Keller testified that he never saw a Form 1099 issued by Somerset Securities to Plaintiff. At the time of preparing Plaintiff's return, he "had the IRS transcript of all the 1099s that were filed and there was nothing from Somerset Securities there." Leavitt testified that when Keller was preparing Plaintiff's 2016 returns, Leavitt was not aware Faler had filed any Form 1099s. Leavitt became aware of that fact at some later point, after April 2020.

Leavitt explained the origin of the QuickBooks summary provided to Keller. Leavitt testified that he was involved with Defendant's audit of Somerset Securities to assist Faler, who eventually left the firm and passed away. Leavitt testified that he reviewed the corporate return, reporting $658,693 in officer compensation, but observed that amount "did not line up with" the corporate books and records. He believed Brace reported on an accrual basis but should have

reported on a cash basis. Leavitt testified that he did not provide the $658,693 figure to Keller because Leavitt stated it was incorrect. Instead, he gave him an export from the QuickBooks file: Leavitt attempted to pull from the file all payments to Plaintiff or related entities in 2016 to provide Keller with a cash basis number to reconcile.[6] He provided that information to the best of his knowledge, but "did not do a full deposit analysis of the 2016 Somerset Securities return at that time."

Keller testified that, on Plaintiff's personal return, he reported all income for which Form 1099s were received and "made an offsetting entry to zero those out" because they were reported by the holdings group.[7] (See Def's Ex C at 50 (statement 1 reporting miscellaneous income, offsetting $1,533,989); Ptf's Ex 1 (reflecting same amount of "Business 1099s Received").) Keller explained that he "never wanted to show [Plaintiff] as an individual in the securities business, [he] always wanted that income to flow through an entity."

Keller testified that the S corporation return was a consolidated return for the passthrough entities and the holding group. To prepare that return, he received from Leavitt a copy of the general ledger (QuickBooks) and bank statements as of December 31. Keller testified that the QuickBooks summary showed transfers from Somerset Securities to Plaintiff totaling $762,692.92.[8] He believed that amount probably reflected checks from Somerset Securities:

---

[6] Leavitt testified Faler had instructed him "to pull the transaction data out of QuickBooks for all transactions to [Plaintiff] or Somerset Holdings Group so that we could get our best at the time best approximation or best information of what was the cash basis transactions out to [Plaintiff] in 2016."

[7] Plaintiff testified that this issue arose because Somerset Wealth Strategies was associated with his social security number for information reported on prior filings of Form 1099. Somerset Wealth Management had its own EIN.

[8] The source of that amount is unclear; the 2016 General Ledger for Somerset Securities reflects commissions to Plaintiff of $658,692.92. (Def's Ex L at 1-2, 4, TC-MD 210351N.) Cai identified an additional $63,500 in payments to Somerset Holdings, indicating a total of $722,193. (Id. at 2.) Both Keller's adjusting journal entry and reconciliation refer to $702,693, rounded. (Ptf's Ex 1, Ex 2 at 5.) Cai questioned how Keller could be confident of the gross receipts he reported for the holdings group if the QuickBooks were unreliable, and he only had one month of bank statements. Keller disputed that the QuickBooks were unreliable, explaining that

$704,192.92 to Plaintiff and $58,500 to Somerset Holdings. Keller did not "directly" report that amount on Plaintiff personal return, but rather, made an adjusting journal entry to the holding group's books described as "commission income." (*See* Ptf's Ex 2 at 12 (adjusting journal entry 23 is $702,692.92).[9]) His note explains the purpose: "To record payments received from Somerset Securities for which no 1099 was received." (*Id.* at 5.)

Keller testified that, not only did he report all the income from the Form 1099s and Somerset Securities, but he also reported an additional $609,723 reflected in bank deposits but for which no Form 1099s were received. (Ptf's Ex 1.) Keller testified that he reported as income all money deposited into the holdings group account; "there were no capital contributions reported into the entity." Those amounts were reported on the S corporation return and passed through to Plaintiff. (*See* Ptf's Ex 1; Def's Ex C at 16, 69; Def's Ex E.) Keller testified that he believes he accounted for all income to Plaintiff in 2016.

C. *Audit Adjustments*

In her audit of Plaintiff's 2016 personal return, Cai increased Plaintiff's wages by $658,693 and increased Plaintiff's qualified dividends by $332,051. (Def's Ex B at 3.) The increase to wages was based on unreported income from Somerset Securities, and the qualified dividends were based on constructive dividends from Somerset Securities. (*Id.* at 3-4.)

II. ANALYSIS

The issue presented is whether Plaintiff's 2016 personal income tax return reported, in

there is a difference between what the bookkeeper records in the books and what the CPA reports on the return, which is the reason for the adjusting journal entry: to pick up something missing from the books. Keller testified that the commissions from Somerset Securities would not have been reflected in holdings groups books if they were paid to Plaintiff personally.

[9] Keller testified that he made the adjusting journal entries at the time he prepared the returns. He did not report the amount as wages on Plaintiff's personal return because there was no W-2.

some capacity, payments totaling $658,693 from Somerset Securities. (*See* Status Report, Dec 6, 2024.[10]) If so, then the adjustment should be reversed. If not, then Defendant's adjustment adding that amount as wages must be upheld. The parties agree that Defendant's adjustment adding $332,051 as a constructive dividend should be upheld. (Def's Ex B at 3-4, Status Report, Dec 6, 2024.)

Unless otherwise modified by Oregon law, taxable income for purposes of computing Oregon personal income tax "means the taxable income as defined in subsection (a) or (b), section 63 of the Internal Revenue Code[.]" ORS 316.022(6), ORS 316.048.[11] Taxable income means gross income minus allowable deductions. IRC § 63(a). "[G]ross income means all income from whatever source derived," including "compensation for services" and "gross income derived from business," unless otherwise excepted. IRC § 61(a). Taxpayers must keep and be prepared to produce "any books, papers, records or memoranda bearing upon [any] matter required to be included in the return[.]" ORS 314.425(1); IRC § 6001. Where taxpayer fails to maintain adequate records, auditors may use indirect methods to reconstruct income. *See, e.g., Kling v. Comm'r*, 81 TCM (CCH) 1448, 2001 WL 309060 (2001). "The reconstruction of income need only be reasonable in light of all surrounding facts and circumstances." *Yoshihara v. Comm'r*, 78 TCM (CCH) 789, 1999 WL 1025407 at \*2 (1999).

Fundamentally, this case turns on the credibility of the witnesses and evidence presented. As the party seeking affirmative relief, Plaintiff bears the burden of proof by a preponderance of the evidence. ORS 305.427. "Preponderance of the evidence means the greater weight of

---

[10] The parties settled all remaining issues relating to Plaintiff's 2016 personal return. (*See* Partial Stipulation of Settled Issues, Oct 22, 2024) ("For TY 2016, both parties agree with other audit adjustments made to Tom Hamlin and Julie Hoefer's personal return such as the adjustments made to Schedule E -Adjustments to Partnerships and S Corps and Net Oregon itemized deductions.").

[11] The court's references to the Oregon Revised Statutes (ORS) are to 2015.

evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). Applying that standard, the court asks whether a fact is "more likely than not." *See Bleasdell v. Dept. of Rev.*, 18 OTR-MD 354, 357 (2004). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof[.]" *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).

For the following reasons, the court finds it more likely than not that Plaintiff's 2016 return reported income of at least $658,693 from Somerset Securities. First, the general ledger and bank statements maintained by Somerset Securities indicate that a total of $990,744 was transferred from the corporation to Plaintiff or the holdings group. That amount was confirmed by Cai's bank deposit analysis, reviewing transfers out of the account. No evidence has been presented to indicate that any additional amounts were transferred in 2016. Second, the court found Keller to be credible and accepts that he was not aware of the Form 1099 filed with Defendant by Somerset Securities on March 20, 2020, notwithstanding that he filed Plaintiff's return in April 2020. Even though Keller was in touch with Leavitt during that time, Defendant's notes indicate he did not have a POA on behalf of Somerset Securities during the audit. Third, Keller's contemporaneous records made while preparing Plaintiff's return show that he included $702,693 on the S corporation return to report payments from Somerset Securities for which no Form 1099 was issued. Taking all that together, the court finds that Plaintiff has met his burden of proof that income of $658,693 from Somerset Securities was reported on his 2016 return.

Defendant urges the court to deny Plaintiff's appeal and uphold the audit adjustment because (1) Plaintiff failed to produce bank statements showing transfers from his personal account to the holdings group bank account; (2) Plaintiff failed to produce the holdings group's

2016 general ledger and bank statements "to detail what made up the LLC's gross income" and to show that $702,693 was, indeed, reported as income; and (3) Plaintiff gave contradictory information concerning the amount at issue: $658,693 vs $702,693. (Def's Post-Trial Br at 2.) The court will address each argument in turn.

With respect to the first argument, it is doubtful that Plaintiff's bank statements would show corresponding transfers to the holdings group. Keller explained that, as with other Form 1099 income, he reflected income on the S corporation return rather than on Plaintiff's personal return, but the net effect was that the income passed through to Plaintiff. Keller explained that the adjusting journal entry capturing the income was based on all transfers from Somerset Securities to Plaintiff or his controlled entities, including the holdings group. It was not based on transfers *between* Plaintiff and the holdings group.

Defendant's second argument, that Plaintiff did not produce documents to prove what made up the holding group's income for 2016, is beyond the scope of the issue presented for trial. The parties stipulated that the only issue for trial was whether the difference between $990,744 and $332,051 "was appropriately reported through one of the related entities, Somerset Wealth Management LLC, Somerset Holdings Group, LLC, Somerset Wealth Strategies, LLC." (Joint Written Status Report at 1, Dec 6, 2024.) Defendant's argument appears to ask a broader question of whether the holdings group accurately reported *all* income for the 2016 tax year. Although the holdings group's bank statements and general ledger could be relevant evidence on that narrow issue, they are not essential here. The court declines to open a broader inquiry into the accuracy of the S corporation return without some evidence indicating that income was omitted.

/ / /

Defendant's third argument, centering on the discrepancy between the amount at issue being $658,693 or the $702,693 figure that Keller reported, appears to be the result of errors made by Somerset Securities. Examples of those errors include claiming a deduction for officer compensation without issuing a Form W-2 or Form 1099, and potentially using the wrong reporting basis (accrual vs. cash). The discrepancy is against Plaintiff's interest, and Plaintiff did not ask for a reduction in the amount of constructive dividends stipulated. The discrepancy does not negate the court's conclusion that at least $658,693 was reported and does not warrant further discussion given the narrowness of the issues designated for resolution at trial.

### III. CONCLUSION

Upon careful consideration, the court finds that Plaintiff has met his burden of proof that income of $658,693 from Somerset Securities was reported on his 2016 return. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is granted in part. The additional income from Somerset Securities of $658,693 added by Defendant's adjustment to Plaintiff's return is removed. As stipulated by the parties, the adjustment for additional income of $332,051 in constructive dividends is upheld.

_____

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*This Decision was signed by Presiding Magistrate Allison R. Boomer and entered on September 11, 2025.*